[No. 22467-4-II. Division Two. March 5, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT NATHANIEL PASTRANA, *Appellant*.

466

*Wayne C. Fricke*, for appellant.

*John W. Ladenburg, Prosecuting Attorney*, and *Michael L. Sommerfeld* and *Barbara L. Corey-Boulet, Deputies*, for respondent.

ARMSTRONG, A.C.J. — Robert Pastrana fired one shot at another car on the freeway, killing one of the three occupants. For this, a jury convicted him of first-degree murder by extreme indifference and two counts of first-degree reckless endangerment. On appeal, Pastrana argues: (1) the trial court erred in failing to instruct the jury on the lesser included offense of manslaughter; (2) the State failed to present sufficient evidence to sustain his conviction for first-degree murder; (3) the first-degree murder statute, RCW 9A.32.030(1)(b), is unconstitutionally vague as applied to him; (4) the double jeopardy clause precludes his convictions of both first-degree murder and reckless endangerment; (5) the convictions of two counts of reckless endangerment merge; and (6) the trial court failed to act impartially in ruling on the prosecutor's alleged misconduct. We affirm.

## FACTS

On October 16, 1996, at approximately 7:20 P.M., Jesus Morales was driving northbound on Interstate 5 (I-5). With him were Annette Vargas and their 22-month old son, An-

gel. Although he was in a hurry, Morales did not notice any problems with other cars. Traffic was heavy and "[t]here were a lot of vehicles" on the road. As Morales neared the exit on 38th street, he heard a loud noise. Angel, who was seated in the back in a car seat, began to scream. Annette made a noise as if she were in pain and then leaned against Morales. After exiting on 38th street, Morales pulled into a parking lot to check on Annette. When Annette did not respond, Morales drove her to the hospital, where she was pronounced dead.

An examination of Morales' car revealed a shattered left passenger window, glass shards in the back seat, a bullet hole in the back of the driver's seat, and a copper jacket from a bullet. Glass shards were also found on the westbound ramp from I-5 to 38th street.

The medical examiner testified that Annette died as a result of a gunshot wound that penetrated her chest and injured her lungs and aorta. A bullet was removed from Annette's chest.

At about the same time Morales' car was fired upon, Robert Pastrana was driving northbound on I-5 with his girl friend, Tasha Deptula. Somewhere on the collector-distributor ramp between 56th and 38th, another vehicle cut in front of Pastrana and nearly ran him off the road. Pastrana swerved onto the shoulder to avoid a collision. In response, Pastrana flashed his lights and honked his horn. But the other driver did not respond. Upset, Pastrana retrieved a gun from behind the seat and told Tasha to sit back. Pastrana then rolled down the passenger window and fired one shot out the window, directly in front of Tasha's face. The other car continued to exit and did not slow or pull off the road.

After he fired the gun, Tasha asked Pastrana what he was thinking. Pastrana replied that he was aiming for a tire. Tasha mentioned that "it's kind of hard to be aiming at anything when you are going down the freeway that fast." Pastrana assured her that he had not hit anyone

because he had seen a spark from the side of the car. Pastrana and Tasha continued on to a planned family dinner.

## A. Lesser Included Offense Instructions

Pastrana argues that the trial court erred by refusing to instruct the jury on first- and second-degree manslaughter as lesser included offenses of first-degree murder.

■ A defendant is entitled to a lesser included offense instruction if: "(1) each element of the lesser offense is a necessary element of the charged offense (the legal test), and (2) the evidence supports an inference that the defendant committed the lesser offense (the factual test)." *State v. Pettus*, 89 Wn. App. 688, 697-98, 951 P.2d 284 (citing *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)), *review denied*, 136 Wn.2d 1010 (1998).

■ A lesser included offense instruction is appropriate only where the evidence supports a finding that the defendant committed the lesser offense. " 'It is not enough that the jury might simply disbelieve the State's evidence. Instead, some evidence must be presented which affirmatively establishes the defendant's theory on the lesser included offense before an instruction will be given.' " *State v. Berlin*, 133 Wn.2d 541, 546, 947 P.2d 700 (1997) (quoting *State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990) (citing *State v. Rodriguez*, 48 Wn. App. 815, 820, 740 P.2d 904 (1987))).

■ First-degree manslaughter requires proof that the defendant (1) recklessly (2) caused the death of another. RCW 9A.32.060(1)(a). First-degree murder by extreme indifference to human life requires proof that the defendant acted (1) with extreme indifference, an aggravated form of recklessness, which (2) created a grave risk of death to others, and (3) caused the death of a person. RCW 9A.32.030(1)(b); *State v. Dunbar*, 117 Wn.2d 587, 593-94, 817 P.2d 1360 (1991). "Because the elements of first degree manslaughter are necessarily included in first degree murder by extreme indifference, the legal prong of the *Work-*

*man* test is satisfied." *Pettus,* 89 Wn. App. at 700. Thus, the only remaining issue is whether Pastrana's conduct satisfies the factual prong of the *Workman* test.

In *Pettus,* the defendant fired at least four shots from a moving vehicle. The shooting occurred in the middle of the day in a residential neighborhood near a school playground. *Pettus,* 89 Wn. App. at 700. The court found no error in the trial court's failure to instruct the jury on manslaughter as a lesser offense of first-degree murder by extreme indifference to human life. "[T]he factual prong is not satisfied because the evidence showed much more than mere reckless conduct—a disregard of a substantial risk of causing a wrongful act. RCW 9A.08.010(1)(c)." *Pettus,* 89 Wn. App. at 700.

■ Pastrana argues that "[u]nlike *Pettus,* the evidence here is not so extreme as to amount to a directed verdict on murder in the first degree." In support of this position, Pastrana maintains that he was unaware that anyone other than the driver was in the "line of fire." But, indiscriminately shooting a gun from a moving vehicle is precisely the type of conduct proscribed by RCW 9A.32.030(1)(b). Pastrana pursued and fired at another vehicle on a major freeway ramp in heavy traffic. Because it was dark, Pastrana could not see how many people were in the car. Although Pastrana claimed to have aimed at the tire, his girl friend observed, "it's kind of hard to be aiming at anything when you are going down the freeway that fast." Furthermore, Pastrana disregarded the grave risk inherent in shooting a gun at a moving car on a crowded freeway, even if the shot was aimed at a tire.

As in *Pettus,* we hold that Pastrana acted with much more than mere recklessness. Rather, he manifested an extreme indifference to human life and created a grave risk of death—conduct which fits only the first-degree murder statute, not manslaughter. *See Pettus,* 89 Wn. App. at 700.

Thus, the trial court did not err in refusing to give a manslaughter instruction.[1]

## B. Sufficiency of the Evidence

Pastrana contends that the evidence was insufficient to find him guilty of first-degree murder beyond a reasonable doubt.

Due process requires the State to prove each element of the crime charged beyond a reasonable doubt. *State v. McCullum*, 98 Wn.2d 484, 489, 656 P.2d 1064 (1983). The standard of review is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Joy*, 121 Wn.2d 333, 338, 851 P.2d 654 (1993); *State v. Rempel*, 114 Wn.2d 77, 82-83, 785 P.2d 1134 (1990). A "challenge to the sufficiency of the evidence admits the truth of the State's evidence." *State v. Barrington*, 52 Wn. App. 478, 484, 761 P.2d 632 (1988) (citation omitted). And all reasonable inferences from the evidence must be drawn in favor of the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Pastrana argues that he did not violate RCW 9A.32.030(1)(b) because his conduct was directed at a specific victim, the driver of the other car. And, continues Pastrana, " 'where the act causing a person's death was specifically aimed at and inflicted upon that particular person *and none other*, the perpetrator of the act cannot properly be convicted of murder in the first degree under sub[section (b)] . . . .' " *State v. Anderson*, 94 Wn.2d 176, 186, 616 P.2d 612 (1980) (quoting *State v. Mitchell*, 29 Wn.2d 468, 484, 188 P.2d 88 (1947)) (emphasis added) (subsection (b) not applicable where defendant immersed two-year-old stepdaughter in tub of scalding water causing

---

[1]Because the evidence does not support an inference that Pastrana committed the lesser offense of first-degree manslaughter, it necessarily follows that the evidence does not support an inference that Pastrana committed the lesser offense of second-degree manslaughter.

death); *State v. Berge*, 25 Wn. App. 433, 607 P.2d 1247 (1980) (defendant who shot sleeping victim did not exhibit manifest indifference to human life in general).

We recently held that the State could charge a defendant who shot at a moving vehicle containing only one person under RCW 9A.32.030(1)(b). *Pettus*, 89 Wn. App. at 694. Pettus, like Pastrana, claimed not to be shooting at a specific victim, but rather at the victim's vehicle. But because the shooting took place in a residential neighborhood and placed many others at grave risk of death, we held that the statute applied. *Pettus*, 89 Wn. App. at 694.

*Anderson* and *Berge* are distinguishable because in each only the life of the victim was endangered. But here, as in *Pettus*, the bullet created a grave risk of death to others who were in the vicinity. In fact, Pastrana killed an unintended victim, Vargas. In addition, Pastrana jeopardized the life of Jesus Morales, Angel Morales, Tasha Deptula and other drivers and passengers on the crowded freeway. Accordingly, the evidence supports his conviction of first-degree murder by extreme indifference.

## C. Constitutionality of RCW 9A.32.030(1)(b)

Pastrana maintains that RCW 9A.32.030(1)(b) is void for vagueness. In essence, Pastrana argues that the statute is so vague as to the meaning of the phrases "grave risk of death" and "extreme indifference to human life" that he could not have known that firing a gun from a moving vehicle at another vehicle on a crowded freeway off-ramp could result in his conviction.

■■ A statute is presumed constitutional and the challenging party has the heavy burden of proving unconstitutionality beyond a reasonable doubt. *State v. Hendrickson*, 129 Wn.2d 61, 83, 917 P.2d 563 (1996). The court evaluates vagueness challenges to statutes that do not involve First Amendment rights in light of the facts of the particular case. *State v. Sigman*, 118 Wn.2d 442, 445, 826 P.2d 144, 24 A.L.R.5TH 856 (1992) (citations omitted). The challenged

474

law "is tested for unconstitutional vagueness by inspecting the actual conduct of the party who challenges the [statute] and not by examining hypothetical situations at the periphery" of the scope of the statute. *City of Spokane v. Douglass*, 115 Wn.2d 171, 182-83 795 P.2d 693 (1990).

■ ■ "The due process clause of the Fourteenth Amendment requires that citizens be afforded fair warning of proscribed conduct." *Douglass*, 115 Wn.2d at 178 (citation omitted). A statute is unconstitutional when it forbids conduct in terms so vague that persons of common intelligence must guess at its meaning and application. *Douglass*, 115 Wn.2d at 179. But, impossible standards of specificity are not required. *City of Seattle v. Abercrombie*, 85 Wn. App. 393, 399, 945 P.2d 1132, *review denied*, 133 Wn.2d 1005 (1997). "When a criminal statute does not define words alleged to be unconstitutionally vague," the court may " 'look to existing law, ordinary usage, and the general purpose of the statute' " to determine whether the statute is sufficiently clear. *State v. Hunt*, 75 Wn. App. 795, 801, 880 P.2d 96 (1994) (citation omitted).

And a statute fails to provide ascertainable standards of guilt if it proscribes conduct by resort to inherently subjective terms or invites an *inordinate* amount of law enforcement discretion. *State v. Coria*, 120 Wn.2d 156, 164, 839 P.2d 890 (1992). But the terms of the statute are not viewed in a vacuum; rather, the question is whether the terms are inherently subjective in the context in which they are used. *State v. Worrell*, 111 Wn.2d 537, 542, 761 P.2d 56 (1988).

In *Dunbar*, the Washington Supreme Court examined the legislative history of RCW 9A.32.030(1)(b) and clarified its essential terms.[2] The court noted that the "revision was intended simply to modernize the antiquated 'evincing a depraved mind' language by changing it to 'manifesting an

---

[2]*Dunbar*, 117 Wn.2d at 592 (alteration in original) stated:

RCW 9A.32.030(1)(b) was enacted in 1975 to replace former RCW 9.48.030(2), which provided:

The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed either—

extreme indifference.' " *Dunbar*, 117 Wn.2d at 593, (quoting Partial Transcript of Senate Judiciary Committee Meeting (Jan. 16, 1975), at 1 (Jud. Comm. Trans.)). To illustrate the circumstances toward which the statute was directed, the court cited testimony from the Senate Judiciary Committee. " 'We are talking about situations such as the Bellevue sniper firing at people indiscriminately, hitting a couple of them; tossing a bomb into a room with complete indifference as to whether it goes off . . . .' " *Dunbar*, 117 Wn.2d at 593 (citing Jud. Comm. Trans., at 9).

Citing an opinion from the Wisconsin Supreme Court, the *Dunbar* court explained that first-degree murder by creation of a grave risk of death requires more than ordinary recklessness. " 'The "depraved mind" standard is distinct from, and is not a species of, recklessness or negligence. "To constitute a depraved mind, more than a high degree of negligence or recklessness must exist . . . ." ' " *Dunbar*, 117 Wn.2d at 594 (quoting *Randolph v. State*, 83 Wis. 2d 630, 639-40, 266 N.W.2d 334 (1978) (quoting *State v. Weso*, 60 Wis. 2d 404, 411, 210 N.W.2d 442 (1973))). The court further clarified the nature of the aggravated form of conduct required by RCW 9A.32.030(1)(b). "LaFave and Scott distinguish manslaughter and murder by creation of a grave risk of death by the presence of a 'very high degree of risk' in the murder context as opposed to a mere 'unreasonable risk' in the manslaughter setting." *Dunbar*, 117 Wn.2d at 594 (quoting Wayne R. LaFave & Austin W. Scott, Jr., Criminal Law § 7.4(a), at 618 (2d ed. 1986)). Thus, the court concluded that RCW 9A.32.030(1)(b) requires an aggravated or extreme form of recklessness. *Dunbar*, 117 Wn.2d at 594.

The *Dunbar* court also clarified the phrase "manifesting an extreme indifference to human life." "The presence of

. . . .

(2) By an act imminently dangerous to others and evincing a depraved mind, regardless of human life, without a premeditated design to effect the death of any individual . . . [.]

the greater degree of risk elevates the level of recklessness to an extreme level, thus 'manifesting an extreme indifference to human life.' " *Dunbar*, 117 Wn.2d at 594. Alternatively stated, extremely reckless conduct that creates a grave risk of death demonstrates an extreme indifference to human life.

We are satisfied that Pastrana's conduct meets the definitions set out in *Dunbar*. By any objective analysis, Pastrana should have known that shooting a gun at an occupied vehicle moving on a crowded freeway off-ramp created a grave risk of death and manifested an extreme indifference to human life. RCW 9A.32.030(1)(b) is not unconstitutionally vague as applied to his conduct.

## D. Double Jeopardy/Merger

Pastrana next argues that the double jeopardy clause prohibits his convictions for first-degree murder and reckless endangerment because the charges arose out of a single act. In the alternative, Pastrana argues that the two counts of reckless endangerment should merge into a single count.

Double jeopardy protects a defendant from multiple prosecutions for the same offense. *Whalen v. United States*, 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980); *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983). But, multiple punishments for the same offense are not unconstitutional when the Legislature intentionally imposes such punishments. *Vladovic*, 99 Wn.2d at 422 (citation omitted).

A defendant is subjected to double jeopardy if he is convicted of offenses that are identical both in fact and in law ("same evidence" test). *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995) (citations omitted); *State v. Roybal*, 82 Wn.2d 577, 581-82, 512 P.2d 718 (1973). This is similar to the same elements test set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). The *Blockburger* test examines "whether each provision requires proof of an additional fact which the other

does not." *Blockburger*, 284 U.S. at 304 (citation omitted). But if each offense contains an element not contained in the other, double jeopardy does not prevent conviction of both. *Vladovic*, 99 Wn.2d at 423.

The elements of first-degree reckless endangerment are (1) reckless discharge of a firearm, (2) a substantial risk of death or serious physical injury to another person, and (3) shooting from a motor vehicle, or from the immediate area of a motor vehicle, used to transport the shooter or the firearm to the scene of the shooting. RCW 9A.36.045(1). On the other hand, the elements of first-degree murder by extreme indifference to human life are (1) acting with extreme indifference, an aggravated form of recklessness, which (2) creates a grave risk of death to others, and (3) causes the death of a person. RCW 9A.32.030(1)(b). Reckless endangerment requires the discharge of a firearm from, or in the area of, a motor vehicle, whereas murder by extreme indifference does not. And murder by extreme indifference requires proof that the defendant's conduct caused the death of a person. Reckless endangerment does not. Thus, each offense contains an element not included in the other. Although the same evidence and *Blockburger* tests are not controlling where there is clear evidence of legislative intent to the contrary, *Calle*, 125 Wn.2d at 778, Pastrana does not point to any such contrary intent. Accordingly, double jeopardy does not bar Pastrana's convictions for reckless endangerment and murder by extreme indifference.

▆▆▆ In the alternative, Pastrana argues, "[a]t a minimum [the reckless endangerment counts] should merge into a single count." In this context, merger is "a doctrine of statutory interpretation used to determine whether the Legislature intended to impose multiple punishments for a single act which violates several statutory provisions." *Vladovic*, 99 Wn.2d at 419 n.2 (citation omitted). The merger doctrine applies when the Legislature has indicated that to prove a particular degree of a crime, " 'the State must prove not only that a defendant committed that crime

. . . but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes . . . .' " *State v. Rivera*, 85 Wn. App. 296, 301-02, 932 P.2d 701 (quoting *Vladovic*, 99 Wn.2d at 421), *review denied*, 133 Wn.2d 1002 (1997). The doctrine is relevant only when a crime is "elevated to a higher degree by proof of another crime proscribed elsewhere in the criminal code." *State v. Eaton*, 82 Wn. App. 723, 730, 919 P.2d 116 (1996).

▬▬ Crimes against multiple victims do not merge. *State v. Larkin*, 70 Wn. App. 349, 358, 853 P.2d 451 (1993). Here, Pastrana placed both Jesus and Angel Morales at a substantial risk of death or serious physical injury. Accordingly, Pastrana's two convictions for reckless endangerment do not merge.

### E. Appearance of Fairness

Pastrana argues that the prosecutor committed misconduct during closing argument and that the trial court expressed partiality when ruling on his objection to the misconduct. Pastrana concludes that the trial court erred in refusing to grant a mistrial.

#### 1. Prosecutorial Misconduct

In presenting a criminal case to the jury, the prosecutor must seek a verdict free of prejudice and based upon reason and fairness. *State v. Torres*, 16 Wn. App. 254, 263, 554 P.2d 1069 (1976). Comments calculated to appeal to the jury's passion and prejudice and encourage it to render a verdict on facts not in evidence are improper. *State v. Stith*, 71 Wn. App. 14, 18, 856 P.2d 415 (1993).

▬▬ "Where improper argument is charged, the defense bears the burden of establishing the impropriety of the prosecuting attorney's comments as well as their prejudicial effect." *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994) (citations omitted). " 'Allegedly improper arguments should be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given.' " *Stith*, 71 Wn. App.

at 19 (quoting *State v. Graham*, 59 Wn. App. 418, 428, 798 P.2d 314 (1990)). A curative instruction will often cure any prejudice that has resulted from an alleged impropriety. *See State v. McNallie*, 64 Wn. App. 101, 111, 823 P.2d 1122 (1992), *aff'd*, 120 Wn.2d 925 (1993).

 Pastrana alleges prosecutorial misconduct based upon the following statement made during closing argument:

> Now, the case goes to you as jurors, you get to be the real people that write the definition. In other words, the law, the law gives you these definitions and says if someone engages in conduct that manifests an extreme indifference to human life that creates a grave risk of death that results in a death, that person can then be guilty of first degree murder. Applying the facts to the law, in other words, saying what the definition means in reality out there on the streets, that is your job. *You are going to tell this community whether or not shooting a gun out a vehicle on the freeway at another moving vehicle and killing somebody is first degree murder or if it is not.*

(Emphasis added to portion Pastrana finds improper.)

In *State v. Greer*, 62 Wn. App. 779, 815 P.2d 295 (1991), the court declined to find error in a similar argument. The prosecutor stated, "I'd ask you to send a clear message out from this box into the community that these two defendants are accountable." *Greer*, 62 Wn. App. at 786. Noting that the remarks must be read in context, the court held that the argument did not appear to constitute an appeal to the jury to decide the case on an improper basis. *Greer*, 62 Wn. App. at 792-93.

Similarly, viewed in the context of the whole argument, the prosecutor's statement was not improper in this case. Clearly, the prosecutor did not ask the jury to render a decision inconsistent with its duty of applying the law to the facts. Pastrana has failed to demonstrate the impropriety of the prosecutor's statement.

Pastrana also fails to demonstrate prejudice. The trial court ameliorated any possible prejudicial effect of the

statement by giving a curative instruction. And the jury is presumed to follow the court's instructions. *State v. Guizzotti*, 60 Wn. App. 289, 296, 803 P.2d 808 (1991). Following the admonition, the prosecutor responded: "Absolutely, I am not saying—if someone took that to mean don't follow the instructions, absolutely not. I am saying your job is to apply the facts to the law. . . . You apply.the facts to the law and render a decision. That's how it works."

Moreover, Pastrana failed to move for mistrial at the time of the allegedly improper statement. "The absence of a motion for mistrial at the time of the argument strongly suggests . . . that the argument or event in question did not appear critically prejudicial to [the defendant] in the context of the trial." *State v. Swan*, 114 Wn.2d 613, 661, 790 P.2d 610 (1990) (citations omitted).

2. Impartiality of Trial Court

Pastrana next maintains that the court's curative instruction indicated its alignment with the prosecution. After Pastrana objected to the prosecutor's closing remarks, the court instructed the jury as follows: "I think it should be clear that we are not sending any message at all. The jury is to decide under the law and under the facts and under the Court's instructions without sympathy or prejudice. I am sure that is what counsel wanted to say."

To fall within the constitutional ban of a comment on the evidence, a judge's statement must suggest his or her personal opinion or view as to credibility, weight or sufficiency of the evidence. *State v. Galbreath*, 69 Wn.2d 664, 671, 419 P.2d 800 (1966). The court's instruction here did not suggest a position on the merits of the State's case. A trial court has the right to give reasons for ruling on objections made at trial and such comments are not an unconstitutional comment on the evidence. *State v. Nesteby*, 17 Wn. App. 18, 22, 560 P.2d 364 (1977). At most, the instructions reiterated the jury's duty to decide the case based on the law and the facts adduced in evidence. The comments to the jury were not improper.

Affirmed.

MORGAN and SEINFELD, JJ., concur.

Review denied at 138 Wn.2d 1007 (1999).