# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68030-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| FELIX VINCENT SITTHIVONG, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: June 17, 2013 |
| | ) | |

Cox, J. — Felix Sitthivong appeals his judgment and sentence, claiming that the trial court abused its discretion when it refused to instruct the jury on the lesser-included instruction of first degree manslaughter. Sitthivong also argues that he received ineffective assistance of counsel at trial because his attorney failed to request a self defense instruction for the charge of first degree assault. In his Statement of Additional Grounds for Review, Sitthivong contends that the trial court abused its discretion and violated his Sixth Amendment right to confrontation when it ruled that a 911 tape recording relevant to this case was inadmissible. We affirm.

On a Saturday night in 2010, Sitthivong was in the Belltown neighborhood with six friends. They visited several bars during the course of the night. At one of these bars in Belltown, Sitthivong argued with another group of men.

Around 1:30 a.m., Sitthivong's group headed towards V-Bar, a late-night establishment in Belltown. Sitthivong testified that as they drove past V-Bar to park, he saw the same group of individuals with whom he had previously argued. Sitthivong testified that he made eye contact with these individuals and believed they recognized him. No other witness reported that they saw this group, or that any individuals in front of V-Bar were those with whom Sitthivong had argued earlier that night.

At some point during the drive to V-Bar, Sitthivong took a gun from another individual in the car. He then put it in his waistband. Sitthivong testified that he did this because he felt afraid of the individuals in front of V-Bar.

Once they parked in a lot close to V-Bar, Sitthivong and his friends got out of the car. Steve Sok, Phillip Nguyen, and Yousouf Ahmach, who had spent the earlier part of the night in Pioneer Square, not Belltown, were standing on the sidewalk near V-Bar.

At trial, there was conflicting testimony about the interaction between Sitthivong, Sok, Nguyen, and Ahmach. Sitthivong claims Sok and Nguyen confronted him and then turned and started walking back to V-bar with Ahmach. Sitthivong testified he then saw Sok and Nguyen turn around and point guns at him. All other witnesses testified that Sok, Nguyen, and Sitthivong argued

2

outside V-bar but that they had not seen Nguyen or Sok with guns. All agree that Sitthivong pulled out a gun and started shooting.

Sitthivong fired eight shots into a crowded street. Sok was killed and Phillip Thomas, a bystander, was shot in the stomach. Another individual who lived across the street from the V-Bar, recorded a video of the shooting from his apartment and also called 911 after the incident.

By amended information, the State charged Sitthivong with first degree premeditated murder of Sok (count I) and, in the alternative, first degree murder by extreme indifference for Sok's death (count V). The State also charged Sitthivong with first degree assault of Thomas, the innocent bystander, (count II) and two counts of first degree attempted murder of Ahmach and Nguyen (count III and IV). All charges carried firearm allegations. Finally, the State charged Sitthivong with unlawful possession of a firearm in the second degree, a charge for which Sitthivong agreed to a bench trial.

After a lengthy jury trial, the trial court provided instructions to the jury regarding Sitthivong's justifiable homicide self defense as to all five counts. It also provided a lesser included offense instruction for count I (premeditated first degree murder), instructing the jury on second degree murder and first degree manslaughter. The trial court denied Sitthivong's request to instruct the jury on the lesser included offense of first degree manslaughter for count V (first degree murder by extreme indifference).

A jury convicted Sitthivong of count V (first degree murder by extreme indifference), counts III and IV (two counts of second degree attempted murder),

3

and count II (first degree assault). The jury also convicted him of the lesser included offense of second degree intentional murder for count I. Finally, they found these crimes were committed while Sitthivong was armed with a firearm.

The trial court found Sitthivong guilty of the firearm possession charge in the bench trial to which he agreed.

The trial court sentenced Sitthivong to standard range sentences for all counts and vacated the second degree murder conviction on double jeopardy grounds.

Sitthivong appeals.

## LESSER INCLUDED INSTRUCTION

Sitthivong argues that the trial court abused its discretion when it denied his request for a lesser included first degree manslaughter jury instruction on count V, first degree murder of Sok by extreme indifference. We disagree.

The right to instruct the jury on a lesser included offense is a statutory right.[1] Under the test enunciated by the supreme court in State v. Workman, a defendant is entitled to a lesser included offense instruction "if two conditions are met."[2] First, under the legal prong of the test, each element of the lesser offense must be a necessary element of the charged offense.[3] Second, under the factual prong, "the evidence must support an inference that the lesser crime was

---

[1] State v. Bowerman, 115 Wn.2d 794, 805, 802 P.2d 116 (1990); RCW 10.61.003, 10.61.006.

[2] 90 Wn.2d 443, 447, 584 P.2d 382 (1978).

[3] State v. Sublett, 176 Wn.2d 58, 83, 292 P.3d 715 (2012).

committed."[4] "[T]he factual test includes a requirement that there be a factual showing more particularized than that required for other jury instructions. Specifically, . . . the evidence must raise an inference that *only* the lesser included/inferior degree offense was committed to the exclusion of the charged offense."[5]

An appellate court views the evidence that purports to support a requested instruction in the light most favorable to the party who requested the instruction at trial.[6]

This court reviews de novo the legal prong of a request for a jury instruction on a lesser included offense.[7] Where a trial court's refusal to give instructions is based on the facts of the case, an appellate court reviews this factual determination for abuse of discretion.[8]

Here, the legal prong of the Workman test is satisfied. "The elements of first degree manslaughter are necessarily included in first degree murder by extreme indifference . . . ."[9]

---

[4] Id.

[5] State v. Fernandez-Medina, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000) (some emphasis added).

[6] Id. at 455-56.

[7] State v. LaPlant, 157 Wn. App. 685, 687, 239 P.3d 366 (2010) (citing State v. Walker, 136 Wn.2d 767, 772, 966 P.2d 883 (1998)).

[8] Id.; State v. Hunter, 152 Wn. App. 30, 43, 216 P.3d 421 (2009) (citing State v. Lucky, 128 Wn.2d 727, 731, 912 P.2d 483 (1996), overruled on other grounds by State v. Berlin, 133 Wn.2d 541, 547-49, 947 P.2d 700 (1997)).

[9] State v. Pettus, 89 Wn. App. 688, 700, 951 P.2d 284 (1998).

Thus, the only question is whether the trial court abused its discretion in deciding that the factual prong was not satisfied. Specifically, did the evidence raise an inference that Sitthivong only committed first degree manslaughter, not first degree murder by extreme indifference?

Under RCW 9A.32.060, first degree manslaughter requires proof that the defendant recklessly caused the death of another.[10] In contrast under RCW 9A.32.030(1)(b), first degree murder by extreme indifference requires proof that the defendant "acted (1) with extreme indifference, an aggravated form of recklessness, which (2) created a grave risk of death to others, and (3) caused the death of a person."[11] There is no dispute here that the firing of shots created a grave risk of death to others and that the shots caused the death of Sok. Thus, the question is whether Sitthivong can point to any evidence in this record that shows his acts were merely reckless.[12]

Two opinions addressing the question of whether a lesser included instruction was warranted are instructive: State v. Pastrana[13] and State v. Pettus.[14] In both of these cases, the defendant was charged with first degree murder by extreme indifference.[15] Division Two of this court held in both cases

---

[10] RCW 9A.32.060(1)(a).

[11] State v. Pastrana, 94 Wn. App. 463, 470, 972 P.2d 557 (1999).

[12] Id. at 471.

[13] 94 Wn. App. 463, 972 P.2d 557 (1999).

[14] 89 Wn. App. 688, 951 P.2d 284 (1998).

[15] Id. at 691; Pastrana, 94 Wn. App. at 467.

that the factual prong of the <u>Workman</u> test was not satisfied.[16] Thus, neither defendant was entitled to a lesser included instruction on first degree manslaughter.[17]

In <u>Pettus</u>, the defendant was convicted of first degree murder by extreme indifference after driving alongside the car of his victim and firing at it.[18] "The first shot hit the [victim's car] in front of the rear tire. The second shot hit [the victim] in the left arm and penetrated his chest. Two other shots passed nearby or through the windshield and exited through the plastic rear window."[19] The court concluded that:

> [t]he evidence of the force of a .357 magnum, the time of day, the residential neighborhood, and Pettus's admitted inability to control the deadly weapon, particularly from a moving vehicle, does not support an inference that Pettus's conduct presented a substantial risk of some wrongful act instead of a "grave risk of death."[20]

In <u>Pastrana</u>, the defendant was driving on the interstate when another car cut in front of him.[21]

> Pastrana retrieved a gun from behind the seat[,] . . . rolled down the passenger window and fired one shot out the window, directly in front of [the passenger's] face.
>
> . . . .

---

[16] <u>Pastrana</u>, 94 Wn. App. at 471-72; <u>Pettus</u>, 89 Wn. App. at 700.

[17] <u>Id.</u>

[18] <u>Pettus</u>, 89 Wn. App. at 691-92.

[19] <u>Id.</u> at 692.

[20] <u>Id.</u> at 700.

[21] <u>Pastrana</u>, 94 Wn. App. at 469.

After he fired the gun, [the passenger] asked Pastrana what he was thinking. Pastrana replied that he was aiming for a tire. [The passenger] mentioned that "it's kind of hard to be aiming at anything when you are going down the freeway that fast."[22]

Division Two then held that "indiscriminately shooting a gun from a moving vehicle is precisely the type of conduct proscribed by RCW 9A.32.030(1)(b)."[23]

Here, as in Pastrana and Pettus, Sitthivong's actions demonstrated not mere recklessness regarding human life but extreme indifference, an aggravated form of recklessness. He fired eight shots indiscriminately into a crowded street. He testified that he "wasn't really aiming. I was just—I just pointed and I shot and I just wanted to get the heck out of there . . . ." When asked whether his eyes were open or closed when he fired, Sitthivong stated that they were a "[l]ittle bit of both." And Sitthivong himself agreed that "there were a lot of people out there that night . . . on the street." This conduct, when measured against Pettus and Pastrana, shows that the trial court was well within its discretion to deny the requested instruction.

Sitthivong argues that because the court instructed on his theory of self defense as to count V, he was also entitled to a lesser included instruction as to that count. He relies principally on State .v. Schaffer.[24] That case is distinguishable.

---

[22] Id.

[23] Id. at 471.

[24] 135 Wn.2d 355, 957 P.2d 214 (1998).

In Schaffer, the supreme court held that the trial court erred when it failed to instruct the jury on the lesser included offense of first degree manslaughter.[25] There, Schaffer argued with another patron of a nightclub, John Magee.[26] According to the supreme court's opinion:

> When they left the club, Schaffer approached Magee, who shook his fist, swore at Schaffer, and threatened to kill him. When Magee moved his arm toward his back, Schaffer thought he was reaching for a gun. Schaffer drew his own gun and fired several shots. Two bullets struck Magee in the back and three in the legs. One bullet struck . . . a passerby in the foot. Magee died at the scene. He was not armed.[27]

Schaffer was charged with first degree premeditated murder.[28] He argued self defense and requested a lesser included instruction as to first degree manslaughter.[29] The supreme court held that the trial court abused its discretion by declining to give the lesser included instruction.[30] It reasoned that "a defendant who reasonably believes he is in imminent danger and needs to act in self-defense, 'but recklessly or negligently used more force than was necessary to repel the attack,' is entitled to an instruction on manslaughter."[31]

---

[25] Id. at 358.

[26] Id. at 357.

[27] Id.

[28] Id.

[29] Id.

[30] Id. at 358.

[31] Id. at 358 (quoting State v. Jones, 95 Wn.2d 616, 623, 628 P.2d 472 (1981)).

Despite the seemingly broad language on which Sitthivong relies, <u>Schaffer</u> does not support the argued proposition here: that a self-defense theory *always* entitles one to the giving of a lesser included instruction. This is not a case of recklessness or negligence in the use of force. Rather, it is a case of extreme indifference to the consequences to human life exhibited by firing repeatedly into a crowded area. The trial court properly exercised its discretion in denying the requested instruction. <u>Schaffer</u> does not command a different result.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Sitthivong argues that his attorney's decision not to demand a self defense instruction as to the first degree assault charge deprived him of his right to effective assistance of counsel. We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his trial.[32] The reasonableness inquiry presumes effective representation and requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct.[33] Failure on either prong defeats a claim of ineffective assistance of counsel.[34]

---

[32] <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); <u>State v. McFarland</u>, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[33] <u>McFarland</u>, 127 Wn.2d at 336.

[34] <u>Strickland</u>, 466 U.S. at 697; <u>State v. Foster</u>, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Here, Sitthivong claims his counsel's performance was not objectively reasonable because, though charged with first degree assault, the court only instructed the jury as to justifiable homicide, not self defense as to assault. This decision was not objectively unreasonable.

Sitthivong's theory of self defense was that he used lawful self defense in shooting at Sok, Ahmach, and Nguyen. The evidence clearly indicated that the only reason for Thomas's injuries was a result of the shots fired by Sitthivong's at Sok, Ahmach, and Nguyen. Sitthivong had no alternative theory of self defense for the assault of Thomas. Nor was there evidence to support such a theory. Sitthivong could only argue that, if the use of force as to Sok, Ahmach, and Nguyen was lawful, it was also lawful as to Thomas.

The jury was provided with the justifiable homicide self defense instruction, which mirrors WPIC 16.02. This instruction requires that the slayer reasonably believe that the person slain intended to commit a felony or to inflict death or great personal injury. The instruction reads as follows:

> It is a defense to the charges in Counts One through Five that the homicide was justifiable as defined in this instruction.
>
> Homicide is justifiable when committed in the lawful defense of the slayer when:
>
> (1) the slayer reasonably believed that the person slain or others whom the defendant reasonably believed were acting in concert with the person slain intended to commit a felony or to inflict death or great personal injury;
>
> (2) the slayer reasonably believed that there was imminent danger of such harm being accomplished; and
>
> (3) the slayer employed such force and means as a reasonably prudent person would use under the same or similar

conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.[35]

Under this justifiable homicide instruction, if the jury found Sitthivong was justified in using force in self defense against Sok, Nguyen, and Ahmach, then the force was lawful. In that case, Sitthivong's conduct towards Thomas also would have been lawful. This was Sitthivong's theory of defense. His attorney was able to argue it fully without a separate self defense instruction on the assault charges. Because the only intent that Sitthivong had was directed at Sok, Ahmach, and Nguyen, his self defense had to be related to this intent as well. Thus, Sitthivong's attorney's performance was not deficient.

Sitthivong argues that "where self defense is asserted against both homicide and non-homicide offenses, the jury should have received Washington Pattern Jury Instructions (WPIC) 16.02 . . . and WPIC 17.02" instructions.[36] WPIC 17.02 requires that the defendant "reasonably believes that he is about to be injured."[37] To support his argument, Sitthivong relies on State v. Cowen.[38]

In Cowen, this court concluded that the justifiable homicide self defense instruction was properly given, rather than the lesser instruction, in a charge of

---

[35] Clerk's Papers at 94.

[36] Brief of Appellant at 19.

[37] WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 17.02, at 253 (3d ed. 2008) (WPIC).

[38] 87 Wn. App. 45, 939 P.2d 1249 (1997).

attempted murder.[39]  The court noted the difference between these two instructions:

> The distinction between the two instructions, WPIC 16.02 and WPIC 17.02, is in the degree of harm that the defendant must perceive.  Under WPIC 16.02, the defendant must have 'reasonably believed that the victim intended to *inflict death or great personal injury*' to justify homicide.  By contrast, under WPIC 17.02, the defendant need only have reasonably believed that 'he [was] about to be *injured*' to justify acts of force.[40]

The <u>Cowen</u> court went on to note that "the important issue is the defendant's mental state in committing the crime, not whether the victim in fact died."[41]

Here, the only belief that Sitthivong argued he had to explain his actions, was that Ahmach, Sok and Nguyen were intending to inflict death or great personal injury against him.  There was no evidence that Thomas intended anything toward Sitthivong, nor did Sitthivong argue that this was the case.  In response to the alleged actions of Ahmach, Sok, and Nguyen, Sitthivong shot at them, accidentally hitting Thomas.  On these facts, under <u>Cowen</u>, only the justifiable homicide instruction was warranted.  Counsel's performance was not deficient.

Because Sitthivong's attorney's performance was not deficient, we need not reach the prejudice prong of the test.

In sum, Sitthivong has failed in his burden to show his attorney was ineffective at trial.

---

[39] <u>Id.</u> at 53.

[40] <u>Id.</u> (some emphasis added) (quoting WPIC 17.02 and WPIC 16.02).

[41] <u>Id.</u>

## STATEMENT OF ADDITIONAL GROUNDS

Sitthivong submitted a statement of additional grounds for review in which he argues that the trial court abused its discretion when it refused to admit the 911 tape recording of a neighbor, who witnessed the shooting. Sitthivong also argues that the trial court violated his Sixth Amendment right to confrontation when it failed to admit the 911 tape recording for impeachment purposes. We disagree with both arguments.

### Sixth Amendment Right to Confrontation

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[42] An objection based on this Sixth Amendment right must be made at trial to preserve the error for appeal.[43]

Here, while Sitthivong's attorney objected to the court's denial of his request to admit the 911 tape recording for impeachment purposes, he did not base this objection on an alleged Sixth Amendment violation. Thus, Sitthivong's argument is not preserved for appeal. And there is no explanation provided why we should consider this argument further under RAP 2.5(a).

### Excited Utterance

Sitthivong also argues that the trial court abused its discretion by failing to admit the 911 tape recording as an excited utterance exception to the prohibition against hearsay. We do not reach the merits of this argument.

---

[42] U.S. CONST. amend. VI.

[43] State v. O'Cain, 169 Wn. App. 228, 235, 279 P.3d 926 (2012).

We note that the 911 tape recording is not a part of the record. It does not appear that Sitthivong requested it be made a part of the record on appeal. We will not review a claim without an adequate record to do so. Because the record here is inadequate, we do not reach the merits of this claim.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR: