FILED
COURT OF APPEALS
DIVISION II

2014 MAR 19 AM 8:46

STATE OF WASHINGTON

BY_____
         DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42603-0-II |
| Respondent, | |
| v. | |
| MARSELE KENITH HENDERSON, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — Marsele Kenith Henderson appeals his conviction for first degree murder with extreme indifference to human life while armed with a firearm. Henderson argues that the trial court erred by refusing to instruct the jury on the lesser included offenses of first degree manslaughter and second degree manslaughter. We reverse and remand for a new trial because Henderson was entitled to a lesser included instruction for first degree manslaughter.

## FACTS

### A. *The Shootings*

Philip Johnson and Henderson were Hilltop Crip gang members and close friends. Johnson told Henderson that he was going to a party at the Boys' and Girls' Club (BGC). Henderson told Johnson not to attend the BGC party because it was too close to the 96th Street

Murderville Folk gang's territory. Johnson went to the BGC party despite Henderson's warning. Johnson was shot at the BGC party and later died.

Henderson, Lewis Davis, and D'Orman McClarron immediately went to the BGC party to check on Johnson. After Henderson, Davis, and McClarron learned that Johnson had been taken to the hospital, they went to the hospital.

On the same night, there was another house party on South Yakima Street in Tacoma. The Yakima Street party took place in a house with a front yard that bordered a street. Attendees had spilled out from the house and formed a large crowd in the front yard. Many people associated with the 96th Street Murderville Folk gang were present. Victor Schwenke worked as security for the party.

Henderson and McClarron left the hospital and went to the Yakima Street party. While Henderson and McClarron were in the street that ran in front of the house, shots were fired from that street, through the front yard, and toward the house. Schwenke was shot and killed.

The State charged Henderson with first degree murder with an extreme indifference to human life while armed with a firearm, alleging that Henderson shot Schwenke when shooting into the Yakima Street party.[1]

The State argued at trial that Henderson was a Hilltop Crip and that he shot indiscriminately into the Yakima Street party with the motive of retaliating against the 96th Street Murderville Folk gang for the shooting of Johnson (a fellow Hilltop Crip). Henderson argued at trial that McClarron, also a Hilltop Crip, was the shooter.

---

[1] RCW 9A.32.030(1)(b). The State also charged Henderson with one count of second degree unlawful possession of a firearm under RCW 9.41.040(2)(a)(i). This charge is not relevant to this appeal.

B.     *Lesser Included Jury Instructions*

Henderson asked the trial court for lesser included jury instructions for first degree manslaughter and second degree manslaughter. At two points during trial, the trial court denied Henderson's requests to give the lesser included instructions.

First, during the defense case, Henderson asked the trial court for lesser included instructions for first degree manslaughter and second degree manslaughter. The trial court declined, citing *State v. Pettus*, 89 Wn. App. 688, 951 P.2d 284 (1998), and *State v. Pastrana*, 94 Wn. App. 463, 972 P.2d 557 (1999). The trial court ruled preliminarily that "depending upon the rest of the case, and it appears to me that, based on both the *Pettus* and *Pastrana* case, that you are not going to get a lesser of Manslaughter 1 and Manslaughter 2 instruction." 10 Report of Proceedings (RP) at 1128.

Second, after the close of evidence, Henderson took exception to the trial court's refusal to instruct the jury on these two lesser manslaughter offenses. The trial court finalized its preliminary decision, stating that "[b]ased on our discussions the other day, I don't think lesser-includeds of Manslaughter First or Second Degree apply based on applying the *Workman*[2] test and the facts of this case." 11-13 RP at 1191.

The jury found Henderson guilty of first degree murder with extreme indifference. Henderson appeals.

---

[2] *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978).

No. 42603-0-II

## ANALYSIS

### MANSLAUGHTER INSTRUCTIONS

Henderson argues that the trial court erred when it denied his request for lesser included jury instructions for first degree manslaughter and second degree manslaughter. We hold that the trial court erred in refusing to give the jury the lesser included instruction for first degree manslaughter but that it did not err in refusing to give the jury the lesser included instruction for second degree manslaughter.

A.    *The Workman Test*

The right to a lesser included instruction is statutory. RCW 10.61.006 states, "[T]he defendant may be found guilty of an offense the commission of which is necessarily included within that with which he or she is charged in the indictment or information." The remedy for failure to give a lesser included instruction when one is warranted is reversal. *State v. Ginn*, 128 Wn. App. 872, 878, 117 P.3d 1155 (2005). A defendant is entitled to an instruction of a lesser included offense if the two prongs of the *State v. Workman* test are met. 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

First, under the *Workman* test's legal prong, each element of the lesser offense must be a necessary element of the charged offense. *State v. Berlin*, 133 Wn.2d 541, 545-46, 947 P.2d 700 (1997) (citing *Workman*, 90 Wn.2d at 447-48). Here, the State concedes that the *Workman* test's legal prong was satisfied.

Second, under the factual prong, the evidence presented in the case must support an inference that only the lesser offense was committed to the exclusion of the charged offense. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000). When analyzing the

4

factual prong, we view the evidence that purports to support a requested instruction in the light most favorable to the party who requested the instruction at trial. *Fernandez-Medina*, 141 Wn.2d at 455-56.

We review a trial court's determination of the factual prong of the *Workman* test for an abuse of discretion. *State v. LaPlant*, 157 Wn. App. 685, 687, 239 P.3d 366 (2010). A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or untenable reasons. *State v. Neal*, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). A trial court's decision is based on untenable reasons if it is based on an incorrect legal standard. *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013).

To determine whether the factual prong is satisfied, we determine whether the facts affirmatively established guilt of the lesser offense, to the exclusion of the greater offense. *State v. Perez-Cervantes*, 141 Wn.2d 468, 481, 6 P.3d 1160 (2000); *Berlin*, 133 Wn.2d at 551. "If the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater, a lesser included offense instruction should be given." *Berlin*, 133 Wn.2d at 551. The factual test requires that the evidence raise a possible inference that the defendant committed the lesser offense, but did not commit the charged offense. *Fernandez-Medina*, 141 Wn.2d at 455.

B.     *First Degree Murder By Extreme Indifference Versus Manslaughter*

To properly analyze the question here, it is necessary to examine the similarities and differences among first degree murder by extreme indifference, first degree manslaughter, and second degree manslaughter. First degree murder by extreme indifference requires proof that the defendant "(1) acted with extreme indifference, an aggravated form of recklessness, which (2)

created a grave risk of death to others, and (3) caused the death of a person." *State v. Yarbrough*, 151 Wn. App. 66, 82, 210 P.3d 1029 (2009); RCW 9A.32.030(1)(b). First degree murder requires a very high degree of risk, which "elevates the level of recklessness to an extreme level, thus 'manifesting an extreme indifference to human life.'" *State v. Dunbar*, 117 Wn.2d 587, 594, 817 P.2d 1360 (1991) (quoting RCW 9A.32.030(1)(b)).

First degree manslaughter requires proof that the defendant *recklessly* caused the death of another. RCW 9A.32.060(1)(a). A person "acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(c).

Second degree manslaughter requires proof that the defendant, *with criminal negligence*, caused the death of another person. RCW 9A.32.070(1). A person "acts with criminal negligence when he or she fails to be aware of a substantial risk that a wrongful act may occur and his or her failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable person would exercise in the same situation." RCW 9A.08.010(1)(d).

C.    *The Pettus and Pastrana Cases*

Two Court of Appeals opinions have applied the factual prong of the *Workman* test to uphold a trial court's denial of a lesser included instruction for first degree manslaughter to a defendant accused of first degree murder with extreme indifference. These cases are *Pettus* and *Pastrana*. These are the two cases the State argued to the trial court here.

In *Pettus*, the defendant was convicted of first degree murder by extreme indifference after driving alongside the car of his victim and firing at it. 89 Wn. App. at 691-92. "The first shot hit [the victim's car] in front of the rear tire. The second shot hit [the victim] in the left arm and penetrated his chest. Two other shots passed nearby or through the windshield and exited through the plastic rear window." *Pettus*, 89 Wn. App. at 692. The trial court concluded,

> The evidence of the force of a .357 magnum, the time of day, the residential neighborhood, and Pettus's admitted inability to control the deadly weapon, particularly from a moving vehicle, does not support an inference that Pettus's conduct presented a substantial risk of *some wrongful act* instead of a "grave risk of death."

*Pettus*, 89 Wn. App. at 700 (emphasis added).

In *Pastrana*, the defendant was driving on the interstate when another car cut in front of him:

> Pastrana retrieved a gun from behind the seat[,] . . . rolled down the passenger window and fired one shot out the window, directly in front of [the passenger's] face.
>
> . . . .
>
> After he fired the gun, [the passenger] asked Pastrana what he was thinking. Pastrana replied that he was aiming for a tire. [The passenger] mentioned that "it's kind of hard to be aiming at anything when you are going down the freeway that fast."

94 Wn. App. at 469. In *Pastrana*, this court quoted *Pettus* to state that "'[t]he factual prong is not satisfied because the evidence showed much more than mere reckless conduct—a disregard of a substantial risk of causing *a wrongful act*.'" 94 Wn. App. at 471 (emphasis added) (quoting *Pettus*, 89 Wn. App. at 700). This court in *Pastrana* used the quote from *Pettus* to justify holding that manslaughter was not a required lesser included instruction for first degree murder with extreme indifference under the *Workman* test's factual prong. 94 Wn. App. at 471-72.

Six years after *Pettus* and *Pastrana*, our Supreme Court decided *State v. Gamble*, 154 Wn.2d 457, 114 P.3d 646 (2005). In *Gamble*, our Supreme Court changed the State's burden to prove manslaughter, requiring the State to show that the defendant knew of and disregarded a substantial risk that a *homicide* may occur, as opposed to merely a substantial risk that *a wrongful act* may occur. 154 Wn.2d at 467-68. The attorneys here did not bring *Gamble* to the trial court's attention.

D.    *Henderson's Case*

Because the State conceded that the *Workman* test's legal prong was satisfied, the only question before us is whether the *Workman* test's factual prong was satisfied for (1) first degree manslaughter or (2) second degree manslaughter.

1. *First Degree Manslaughter*

Henderson argues that *Gamble*'s narrowing of first degree manslaughter's recklessness element—requiring that the defendant disregard a substantial risk of *homicide*, rather than just a substantial risk of *a wrongful act*—brings manslaughter closer to first degree murder with extreme indifference such as to give Henderson a right to a first degree manslaughter instruction under the *Workman* test's factual prong. The State argues that in spite of *Gamble*, we should continue to follow *Pettus* and *Pastrana* and hold that Henderson has no right to a first degree manslaughter instruction. We agree with Henderson.

The analyses in *Pettus* and *Pastrana* are no longer helpful to a trial court ruling on whether the factual prong of the *Workman* test has been met for a first degree manslaughter jury instruction. This is because *Pettus* and *Pastrana* explicitly justified their holdings on the grounds that shooting guns in a high-risk manner cannot constitute a substantial disregard of

*some wrongful act*, which is no longer the standard following *Gamble*. *Pettus*, 89 Wn. App. at 700; *Pastrana*, 94 Wn. App. at 471. *Pettus* and *Pastrana* do not stand for the proposition that such acts cannot constitute a reckless disregard of *homicide* which is the definition of recklessness following *Gamble*.

With *Gamble*'s definition of recklessness in mind, we now turn to Henderson's case. A lesser included instruction is required where the jury could rationally convict the defendant of the lesser offense, while at the same time acquitting on the charged offense. *Berlin*, 133 Wn.2d at 551. Viewing the evidence in the light most favorable to Henderson, we hold that a rational jury could find that Henderson shot into a crowd but that he did so with a disregard for a substantial risk of homicide, rather than an extreme indifference that caused a grave risk of death. A rational jury could convict Henderson of first degree manslaughter, while acquitting him on first degree murder with extreme indifference. Thus, the trial court applied the incorrect legal standard from *Pettus* and *Pastrana*. Based on this error, we reverse and remand for a new trial. *Ginn*, 128 Wn. App. at 878.

2. *Second Degree Manslaughter*[3]

Henderson argues that *Gamble*'s narrowing of first degree manslaughter's recklessness element required the trial court to give Henderson a second degree manslaughter instruction. We disagree.

*Gamble* and *State v. Peters* both state that first degree manslaughter's recklessness element requires demonstrating that the defendant committed an act with a substantial disregard

---

[3] We address this issue as it is likely to recur on retrial. *See State v. Pierce*, 169 Wn. App. 533, 538, 280 P.3d 1158, *review denied*, 175 Wn.2d 1025 (2012).

for the risk of a homicide. 154 Wn.2d at 467-68; 163 Wn. App. 836, 837-38, 261 P.3d 199 (2011). However, the cases do not address whether second degree manslaughter's criminal negligence element requires demonstrating that the defendant failed to be aware of a substantial risk that a *homicide* (rather than "a wrongful act") may occur. *See Gamble*, 154 Wn.2d at 467-68; *Peters*, 163 Wn. App. at 837-38. But by applying *Gamble*'s reasoning, it is logical to assume that criminal negligence for manslaughter would require the State to prove that a defendant failed to be aware of a substantial risk that a *homicide* (rather than "a wrongful act") may occur. We assume without deciding that the mens rea of criminal negligence requires the failure to be aware of a substantial risk that a *homicide* may occur, because it does not change the result.

A lesser included instruction is required where the jury could rationally convict the defendant of the lesser offense, while at the same time acquitting on the charged offense. *Berlin*, 133 Wn.2d at 551. When one shoots randomly into a crowd, it is obvious that homicide is a possible risk. Thus, no rational jury could possibly conclude that Henderson shot a gun into a crowd while failing to be aware that a homicide could occur. Rather, a rational jury that finds that Henderson shot a gun into a crowd must necessarily find that he displayed, at the very least, a conscious disregard of a substantial risk of homicide. Thus, a rational jury could not find on these facts that Henderson committed only second degree manslaughter by shooting randomly into a crowd. For this reason, the trial court did not abuse its discretion in refusing to give the lesser included instruction for second degree manslaughter.[4]

---

[4] Henderson also argues that the trial court erred by admitting gang evidence at trial without conducting an ER 404(b) analysis. While it is the best practice to engage in such an ER 404(b) analysis, including a balancing of the evidence's probative value against its potential to cause undue prejudice, we do not consider this issue. Because we reverse Henderson's conviction and remand for a new trial, this evidentiary issue is now moot.

No. 42603-0-II

We reverse and remand for a new trial.

_Worswick, C.J._

Worswick, C.J.

We concur:

_Johanson, J._

Johanson, J.

_Bjorgen, J._

Bjorgen, J.

11