WAYNE CURRY, Appellant, v. THE STATE OF
NEVADA, Respondent.

No. 19812

May 16, 1990 792 P.2d 396

*Martillaro & Martillaro,* Carson City; and *Paul A. Sherman,*
Carson City, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Brent T. Kolvet,*
District Attorney, and *Harold Kuehn,* Deputy District Attorney,
Douglas County, for Respondent.

## OPINION

*Per Curiam:*

Appellant, Wayne Curry (Curry), appeals from his convictions
of attempted manslaughter, battery with a deadly weapon, battery
with intent to kill, battery causing substantial bodily harm and

simple battery. The attempted manslaughter conviction is reversed. The remaining convictions are affirmed.

## Facts

The evidence at trial revealed a brutal attack by Curry on a victim who was then his wife, Donna Curry (Donna). On November 17, 1987, Donna returned home from her job in Reno to find a note from Curry. The note told Donna to drink some wine, smoke some marijuana and dress warm because there was going to be a surprise that night. Donna, after having a glass of wine and smoking some marijuana, was relaxed when she heard Curry come home around 11:30 p.m.

According to Curry, the surprise was for the two to go up into the mountains for a romantic interlude. Following romantic advances, Donna fell asleep on the bed while Curry took a shower. When she awoke, Curry had his hands around her throat, choking her. Curry then tried to suffocate Donna by forcing a pillow over her face. When these efforts failed, Curry took an empty wine bottle and hit Donna in the head just above the temple area. On the third blow, the bottle broke. Curry hit Donna again with the broken bottle, inflicting several gashes in her head.

Donna was eventually able to get away from Curry. She ran into the bathroom, where Curry forced her into the tub and held her face down while he turned on the water. Again, Donna was able to free herself. She left the house and ran to a neighbor's house. Donna testified that when the neighbor's porch light was switched on, she saw Curry aiming his .357 magnum at her. The neighbors let Donna into their home, attended to her and called the Douglas County Sheriff's Department.

Curry, during interrogation, feigned a memory loss, alleging he could not recall any of the events between exiting the shower and his arrest. However, at trial, Curry testified in detail to the events which led to his arrest and conviction. He characterized the struggle as an attempt on his part to protect himself from an attack by Donna. He stated that Donna was in some kind of trance. He further alleged that he never took his gun out of the dresser drawer where it was kept, although he admitted checking to be sure it was still there. However, Donna's story was corroborated by both her son and daughter, who both witnessed Curry reenter the house carrying his revolver.

The State established a possible motive for attempted murder. It was determined that there was a $125,000 life insurance policy on Donna, with Curry named as the beneficiary. Finally, Curry suffered financial difficulty following a heart attack. Additionally, it was uncontroverted that Curry had a paramour by the name of Karen Gallimore, to whom he is now married.

*Discussion*

The sole issue of merit on appeal is whether attempted voluntary manslaughter is a crime under Nevada law. This is an issue of first impression and we now hold that attempted voluntary manslaughter is not a crime in Nevada.

Voluntary Manslaughter, as defined by NRS 200.050, consists of the following,

> In cases of voluntary manslaughter, there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing.

NRS 200.050. By definition, voluntary manslaughter is a general intent crime. One cannot logically specifically intend to act pursuant to a spontaneous, unanticipated and therefore, truly irresistible passion. An "attempt," as defined in NRS 193.330, is a specific intent crime. The accused must formulate a specific intent to commit the crime attempted. *See* Bailey v. State, 100 Nev. 562, 563, 688 P.2d 320, 321 (1984). We further defined the intent necessary for an attempted crime in Keys v. State, 104 Nev. 736, 766 P.2d 270 (1988), when we stated:

> An attempt, by nature, is a failure to accomplish what one *intended* to do. Attempt means to try; it means an effort to bring about a desired result. Thus one cannot *attempt* to be negligent or *attempt* to have the general malignant recklessness contemplated by the legal concept, "implied malice" (emphasis in original).

*Id.* at 740, 766 P.2d at 273. The crime of attempted voluntary manslaughter is therefore an illogical illusion. *See* People v. Brown, 249 N.Y.S.2d 922 (1964); People v. Foster, 225 N.E.2d 200 (N.Y. 1967); and People v. Weeks, 250 N.E.2d 12 (Ill.App. 1967).

We recognize that the position adopted by this court is currently the minority position[2] among our sister jurisdictions. However, under the statutory language defining an "attempt" and the

---

[2]A search revealed that twenty-seven states, including Nevada and the District of Columbia, have not addressed the issue of "attempted voluntary" manslaughter. Of the remaining twenty-four jurisdictions, the clear majority (eighteen) appear to recognize the crime of "attempted voluntary" manslaughter. These include: California, Colorado, Florida, Hawaii, Indiana, Maryland, Michigan, New Hampshire, New Mexico, Ohio, Oregon, Pennsylvania, Tennessee, Texas, Utah, Vermont, West Virginia, and Wyoming.

fundamental principles undergirding "specific intent," we conclude that the majority position validating attempted voluntary manslaughter as a criminal offense is not a reasonably supportable position. For reasons previously stated, we accept the minority view and hold that attempted voluntary manslaughter cannot exist in this jurisdiction as a crime.

Because the oxymoronic crime of "attempted voluntary manslaughter" does not exist in Nevada, Curry's conviction and sentence on that count must be vacated.[3] However, Curry's contention that the jury instructions given on attempted manslaughter so confused the jury as to deny him a fundamentally fair trial is without merit. The record clearly demonstrates that the jury was not foreclosed from rendering a fair verdict and that, in fact, Curry was fairly tried and convicted. Therefore, all remaining convictions are affirmed.

---

[3]In *People v. Foster*, 225 N.E.2d 200 at 201-202 (1967), the New York Court of Appeals allowed a plea of guilty of attempted manslaughter to stand on grounds that it was bargained for by the defendant in order to avoid the risk of conviction of a more serious offense. Although the *Foster* result may be both pragmatic and desirable to a defendant and prosecutor, we are not receptive to the prospect of a state convicting and punishing citizens for non-existent crimes whether or not a defendant is agreeable.