FILED
COURT OF APPEALS
DIVISION II

2014 SEP -3 AM 3: 21

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43785-6-II |
| Respondent, | |
| v. | |
| DONTRAIL MONIQUE LATHAM, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Dontrail Latham appeals his life sentence, imposed pursuant to the Persistent Offender Accountability Act (POAA).[1] Latham argues that he does not qualify as a "persistent offender" because his two Nevada offenses, a guilty plea to battery with "substantial bodily harm" and an *Alford*[2] plea to voluntary manslaughter, are not comparable to Washington State's "most serious offenses." Because neither of the two Nevada offenses is comparable to any of Washington State's most serious offenses raised by the State on appeal or relied on by the trial court, we reverse Latham's sentence and remand for resentencing.

---

[1] RCW 9.94A.570.

[2] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

## FACTS

### A. *Guilty Plea to Battery With Substantial Bodily Harm*

In 2003 in Nevada, Latham pleaded guilty to battery with substantial bodily harm,[3] "as more fully alleged in the [information] attached," for acts occurring on October 7, 2003. Exhibit 14 at 1. The information stated in part:

> Latham . . . wilfully, unlawfully, and feloniously use[d] force or violence upon the [victim] by punching the [victim] about the body numerous times, resulting in substantial bodily harm to the [victim].

Exhibit 14 at 7-8. At the plea colloquy, Latham gave the following explanation of his conduct:

> The Court: What did you do on or about October 7th that caused you to plead guilty to the crime of battery with substantial battery [sic] harm?
> [Latham]: I hit [the victim].
> The Court: That resulted in substantial bodily harm to the victim?
> [Latham]: Yes, your honor.

Exhibit 13 at 9.

### B. *Alford Plea to Voluntary Manslaughter*

Later, also in Nevada, Latham entered an *Alford* plea to voluntary manslaughter,[4] "as more fully alleged in the [information] attached" for acts occurring on October 7, 2008. Exhibit 18 at 1. The information stated in part:

> Latham . . . without authority of law, wilfully, unlawfully, and feloniously, without malice and without deliberation kill[ed] [the victim], a human being, by [Latham] causing a blunt force trauma to the head of the [victim] by striking the [victim] with his fist and/or an unknown object and/or by causing [the victim's] head to strike the ground and/or unknown object and/or by an unknown manner, said act of [Latham] being the result of a sudden heat of irresistible passion caused by a provocation of the [victim].

---

[3] Former NEV. REV. STAT. § 200.481 (2003).

[4] NEV. REV. STAT. § 200.040.

Exhibit 18 at 8. Due to inaudible portions, the plea colloquy record is incomplete:

Judge:    (Inaudible). I want you to listen now to the facts that are going to be put on the record by the State, okay?
[Latham]:  All right.
Prosecutor: Thank you, Judge. . . . [Latham] and the named victim . . . met for a drug transaction. They went into an alley and during the process of the drug transaction, Mr. Latham got into a fight with [the victim]. In the process of the fight, Mr. Latham did in fact kill [the victim] through force of violence willfully, feloniously, and without malice of forethought, deliberation, (inaudible). [The victim] died as a result of (inaudible).
. . . .
Judge:    Did you hear that factual basis put on the record by the State, sir?
[Latham]:  Yes, I have.
Judge:    You're not contesting those facts, are you?
[Latham]:  No.

3B Verbatim Report of Proceedings at 689-90.

C.    *Conviction and Sentence for Second Degree Assault*

In Washington State, a jury found Latham guilty of second degree assault,[5] for acts committed on October 27, 2011. The trial court ruled Latham to be a persistent offender, based on the Washington offense and the two prior Nevada convictions, and imposed the POAA's mandatory life sentence. The trial court considered the Nevada informations, the plea agreements, the judgments of conviction, and the plea colloquy records. The trial court ruled both Nevada offenses comparable to Washington's most serious offenses. Specifically, the trial court ruled Nevada's battery with substantial bodily harm both legally and factually comparable to Washington's second degree assault, and Nevada's voluntary manslaughter legally comparable to Washington's second degree murder. Latham challenged both offenses' comparability below. Latham now appeals.

---

[5] RCW 9A.36.021.

No. 43785-6-II

ANALYSIS

The POAA states that a persistent offender shall be sentenced to life imprisonment without the possibility of release. RCW 9.94A.570. A defendant is a persistent offender if he or she has been convicted in Washington of a most serious offense, and has on at least two other prior occasions been convicted of a most serious offense in this or any other state. RCW 9.94A.030(37)(a). Washington's most serious offenses include (1) any Class A felony, (2) second degree assault, (3) first degree manslaughter, and (4) second degree manslaughter. RCW 9.94A.030(32)(a), (b), (k), (l). We review de novo whether an offense may be classified as a most serious offense. *State v. Thiefault*, 160 Wn.2d 409, 414, 158 P.3d 580 (2007); *State v. Labarbera*, 128 Wn. App. 343, 348, 115 P.3d 1038 (2005).

For a foreign offense to be classified as a most serious offense, the foreign offense must be legally or factually comparable to a Washington statute that proscribes a most serious offense. *See In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005). The statutes effective at the time the defendant committed the foreign offense control our analysis. *State v. Morley*, 134 Wn.2d 588, 606, 952 P.2d 167 (1998); *see In re Pers. Restraint of Crawford*, 150 Wn. App. 787, 794-95, 209 P.3d 507 (2009).

To determine whether a foreign offense is comparable to a Washington offense, we apply a two-part test. *Lavery*, 154 Wn.2d at 255. First, we compare the foreign offense's elements with the comparable Washington offense's elements to determine whether they are legally comparable. *State v. Ford*, 137 Wn.2d 472, 479, 973 P.2d 452 (1999). Offenses are legally comparable if their elements are substantially similar or if the foreign offense is not broader than

4

No. 43785-6-II

the Washington offense.[6] *See Ford*, 137 Wn.2d at 479; *State v. Jordan*, 180 Wn.2d 456, 461, 325 P.3d 181 (2014).

If the offenses are not legally comparable, we then examine whether the offenses are factually comparable. *State v. Thomas*, 135 Wn. App. 474, 480, 144 P.3d 1178 (2006). Offenses are factually comparable if the defendant's conduct constituting the foreign offense, as evidenced by the undisputed facts in the foreign record, would constitute the Washington offense. *Thomas*, 135 Wn. App. at 480. In this inquiry into factual comparability, the trial court can consider only facts proven to a trier of fact beyond a reasonable doubt or those to which the defendant admitted or stipulated. *Thomas*, 135 Wn. App. at 482. The State bears the burden of providing sufficient evidence to prove by a preponderance of the evidence that a foreign offense is comparable to a Washington offense. *Ford*, 137 Wn.2d at 480-81; *State v. McCorkle*, 137 Wn.2d 490, 495, 973 P.2d 461 (1999).

---

[6] We recognize that our State Supreme Court has put forth two tests for determining legal comparability. *Compare State v. Jordan*, 180 Wn.2d 456, 461, 325 P.3d 181 (2014), *with State v. Olsen*, 180 Wn.2d 468, 472-73, 325 P.3d 187 (2014). When considering out-of-state convictions, the SRA provides that "[o]ut-of-state convictions for offenses shall be classified according to the comparable offense definitions and sentences provided by Washington law." RCW 9.94A.525(3). We have interpreted this language to require "substantial[ ] similar[ity]" between the elements of the foreign offense and the Washington offense. *Jordan*, 180 Wn.2d at 461.

## I. BATTERY WITH SUBSTANTIAL BODILY HARM

A. *Legal Comparability*

Latham argues that Nevada's battery with substantial bodily harm is not legally comparable to Washington's second degree assault because, unlike Washington, Nevada included "prolonged physical pain" in its definition of substantial bodily harm. We agree.

Nevada defined substantial bodily harm at NEV. REV. STAT. § 0.060:

> 1. Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ; or
> 2. Prolonged physical pain.

Washington defined substantial bodily harm at RCW 9A.04.110(4)(b):

> [B]odily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part.

Nevada's definition of substantial bodily harm included prolonged physical pain, whereas Washington's definition of substantial bodily harm was limited to bodily injury involving disfigurement, loss or impairment of the functioning of any bodily part or organ, or a fracture. NEV. REV. STAT. § 0.060; RCW 9A.04.110(4)(b). Thus, a defendant who assaulted a victim and caused the victim prolonged physical pain, but did not cause him or her disfigurement, loss of the functioning of any bodily part or organ, or a fracture, could have been convicted of Nevada's battery with substantial bodily harm, but not Washington's second degree assault.

In many cases, prolonged physical pain may coexist with disfigurement, loss or impairment of the functioning of any bodily part or organ, or a fracture. And in some cases physical pain may cause the impairment of the functioning of any bodily part. But because these circumstances do not necessarily exist in every case, it is possible that a defendant could have

caused substantial bodily harm under Nevada's definition, but not under Washington's definition. Thus, Nevada's battery with substantial bodily harm is broader than Washington's second degree assault, precluding the offenses' legal comparability and we move to the second prong of the test.

B.      *Factual Comparability*

Latham argues that the State failed to provide sufficient evidence to prove that his plea to Nevada's battery with substantial bodily harm is factually comparable to Washington's second degree assault because the State did not provide any evidence as to the victim's injuries. We agree.

Despite the State's arguments to the contrary, the State did not submit evidence of the victim's injuries below. No evidence shows that Latham's assault caused the victim disfigurement, loss or impairment of the function of any bodily part or organ, or a fracture, as opposed to prolonged physical pain. Consequently, the State failed to provide sufficient evidence to prove with a preponderance of the evidence that Latham's violation of Nevada's battery with substantial bodily harm is factually comparable to Washington's second degree assault.[7] Thus, the trial court erred in considering this conviction a prior most serious offense when it sentenced Latham.

---

[7] Because the difference between Nevada's and Washington's definitions of substantial bodily harm render these two offenses incomparable, we do not address whether any differences in the two offenses' mens rea standards render them incomparable.

7

## II. COMPARABILITY OF NEVADA'S VOLUNTARY MANSLAUGHTER AND WASHINGTON'S HOMICIDE

Latham argues that Nevada's voluntary manslaughter is not comparable to first or second degree manslaughter. The State argues that Nevada's voluntary manslaughter is comparable to first degree manslaughter, second degree manslaughter, and second degree felony murder. In addition, it appears the trial court held Nevada's voluntary manslaughter comparable to second degree murder.[8] We hold that Nevada's voluntary manslaughter offense is neither legally nor factually comparable to any of the Washington offenses put forward by the State or relied on by the trial court.[9]

Nevada defined voluntary manslaughter at NEV. REV. STAT. § 200.040-.050. NEV. REV. STAT. § 200.040 states in part:

> 1. Manslaughter is the unlawful killing of a human being, without malice express or implied, and without any mixture of deliberation.
> 2. Manslaughter must be voluntary, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible, or involuntary.

NEV. REV. STAT. § 200.050 states in part:

> 1. In cases of voluntary manslaughter, there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing.

---

[8] While the State does not argue this issue on appeal, they argued at sentencing, and the trial court held, that Nevada's voluntary manslaughter is comparable to Washington's second degree murder. Because our review is de novo, we consider the point.

[9] Latham argues that voluntary manslaughter is not legally comparable with Washington's homicide offenses because Nevada's and Washington's self-defense statutes are not comparable. Our Supreme Court recently held that the trial court "need not analyze divergent self-defense laws as part of its comparability analysis." *State v. Jordan*, 180 Wn.2d 456, 467, 325 P.3d 181 (2014). Thus, any differences between Washington's and Nevada's self-defense laws have no effect on the comparability of Nevada's and Washington's homicide offenses.

In Nevada, voluntary manslaughter was a general intent offense by definition. *Curry v. State*, 106 Nev. 317, 792 P.2d 396, 397 (1990) (holding that attempted voluntary manslaughter is not a crime in Nevada because attempt is a specific intent crime, and one cannot logically commit voluntary manslaughter with a specific intent). Nevada's "general intent" required that the defendant intended to engage in the act that caused the harm, but did not require the defendant to have any mens rea as to the harm itself. *Bolden v. State*, 121 Nev. 908, 124 P.3d 191, 201 (2005) (receded from on other grounds by *Cortinas v. State*, 124 Nev. 1013, 195 P.3d 315 (2008)). Conversely, Nevada's "specific intent" required the defendant to act with intent to cause a particular result. *See Ford v. State*, 127 Nev. Adv. Op. 55, 262 P.3d 1123, 1129 (2011). Voluntary manslaughter could not be committed with a specific intent because "[o]ne cannot logically specifically intend to act pursuant to a spontaneous, unanticipated and therefore, truly irresistible passion." *Curry*, 792 P.2d at 397.

The State argues that Nevada's voluntary manslaughter is comparable to first degree manslaughter, second degree manslaughter, and second degree felony murder. In addition, it appears the trial court held Nevada's voluntary manslaughter comparable to second degree murder. We address each of these offenses put forward by the State or relied on by the trial court in turn.

A.    *First Degree Manslaughter*

Latham argues that Nevada's voluntary manslaughter and Washington's first degree manslaughter are not legally comparable because the offenses had different mens rea elements and are not factually comparable because the undisputed facts in the foreign record do not evidence knowledge of and disregard of a substantial risk that a homicide may occur. We agree.

9

1. *Legal Comparability*

Washington defined first degree manslaughter at former RCW 9A.32.060 (1997):

A person is guilty of manslaughter in the first degree when [h]e recklessly causes the death of another person.

Nevada's voluntary manslaughter, a general intent offense, required only that the defendant intended to perform the act that caused the homicide, regardless of the defendant's mens rea as to the homicide itself. NEV. REV. STAT. § 200.040; *Curry*, 792 P.2d at 397. Conversely, Washington's first degree manslaughter required proving that the defendant acted with knowledge of and disregard of a substantial risk that a *homicide*, rather than "a wrongful act," may occur. *State v. Henderson*, 180 Wn. App. 138, 147, 321 P.3d 298 (2014) (citing *State v. Gamble*, 154 Wn.2d 457, 467-68, 114 P.3d 646 (2005)).

Accordingly, someone who intentionally assaulted a victim and thereby caused a death, but did so without knowing of and disregarding a substantial risk that a homicide may occur, could have been convicted of Nevada's voluntary manslaughter, but not Washington's first degree manslaughter. Thus, Nevada's voluntary manslaughter is broader than Washington's first degree manslaughter, precluding the offenses' legal comparability.

2. *Factual Comparability*

Because the offenses are not legally comparable, we next analyze factual comparability. We conclude that Latham's violation of Nevada's voluntary manslaughter is not factually comparable to Washington's first degree manslaughter.

At the time of Latham's Nevada manslaughter conviction, Nevada had two forms of malice aforethought: express malice and implied malice. *Keys v. State*, 104 Nev. 736, 766 P.2d 270, 272 (1988). Nevada defined express malice at NEV. REV. STAT. § 200.020:

> Express malice is that deliberate intention unlawfully to take away the life of a fellow creature.

Thus, one who acted with intent to cause a homicide unlawfully had express malice aforethought. *See Keys*, 766 P.2d at 272.

In Nevada, "'[w]illful' is a word 'of many meanings, its construction often being influenced by its context.'" *In re Fine*, 116 Nev. 1001, 13 P.3d 400, 413 (2000) (quoting *Screws v. United States*, 325 U.S. 91, 101, 65 S. Ct. 1031, 89 L. Ed. 1495 (1944)). "As a general rule, [willful] denotes an *act* which is intentional, or knowing, or voluntary, rather than accidental." *Fine*, 13 P.3d at 413 (emphasis added). "'[W]illful' describes actions that are . . . 'not necessarily malicious.'" *Nev. Serv. Emp.'s Union/SEIU Local 1107 v. Orr*, 121 Nev. 675, 119 P.3d 1259, 1263 (2005) (quoting BLACK'S LAW DICTIONARY 1593 (7th ed. 1999)). Because this general definition of willful stated a mens rea as to the act that caused a harm, but not as to the harm itself, it stated a general intent. *Bolden*, 124 P.3d at 201.

In the context of Nevada's murder statute, willful meant to act with an intent to cause a homicide. *Byford v. State*, 116 Nev. 215, 994 P.2d 700, 713 (2000). Because this murder definition of willful stated an intent to cause a particular result, it stated a *specific* intent. *See Byford*, 994 P.2d at 713; *Ford*, 262 P.3d at 1129. Nevada law did not use the term willful in the context of manslaughter.

Here, Latham stated that he would not contest the facts as the Nevada prosecutor stated them, and the Nevada prosecutor stated that Latham acted willfully, unlawfully, and without malice aforethought.

We hold that Latham stipulated to the general definition of willful, rather than to the definition used in the murder context. This is for two reasons.

11

First, Latham could not have committed voluntary manslaughter with the murder definition of willful because the murder definition of willful stated a specific intent and it was legally impossible to commit voluntary manslaughter with a specific intent. *Curry*, 792 P.2d at 397. Conversely, because the general definition of willful stated a general intent, it was not inconsistent with voluntary manslaughter.

Second, the murder definition of willful was inconsistent with the other stipulations in Latham's *Alford* plea. Latham stipulated that he acted willfully, unlawfully, and without malice aforethought. Interpreting Latham's stipulations with the murder definition of willful, Latham stipulated to acting with intent to cause a homicide unlawfully, which established express malice aforethought. This contradicts Latham's stipulation that he acted without malice aforethought. Conversely, interpreting Latham's stipulations with the general definition of willful, Latham did not stipulate to acting with intent to cause a homicide, and thus, did not contradict his stipulation that he acted without malice aforethought.

We hold that Latham's stipulation to the prosecutor's charge that he acted willfully stipulated to the general definition of willfully, rather than to the murder definition. Thus, Latham stipulated to committing an intentional act that caused a homicide, but did not stipulate to committing that act with knowledge of and disregard of a substantial risk that a homicide may occur. Thus, because the undisputed facts in the foreign record do not evidence an element of Washington's first degree manslaughter, knowledge of and disregard of a substantial risk that a homicide may occur, the State failed to provide sufficient evidence to prove with a preponderance of the evidence that Latham's *Alford* plea to Nevada's voluntary manslaughter is factually comparable to Washington's first degree manslaughter.

B.    *Second Degree Manslaughter*

Latham argues that Nevada's voluntary manslaughter and Washington's second degree manslaughter are not legally comparable because the offenses had different mens rea elements, and are not factually comparable because the undisputed facts in the record below do not evidence Latham's failure to be aware of a substantial risk that a homicide may occur. We agree.

1.    *Legal Comparability*

Washington defined second degree manslaughter at former RCW 9A.32.070(1) (1997):

> A person is guilty of manslaughter in the second degree when, with criminal negligence, he causes the death of another person.

Washington defined criminal negligence at former RCW 9A.08.010(1)(d) (1975):

> A person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation.

Washington's second degree manslaughter required proving criminal negligence. In *Henderson*, while not deciding the precise point at issue here, this court stated that "by applying *Gamble*'s reasoning, it is logical to assume that criminal negligence for manslaughter would require the State to prove that a defendant failed to be aware of a substantial risk that a *homicide* (rather than 'a wrongful act') may occur." *Henderson*, 180 Wn. App. at 149. *Henderson*'s logic leads us to hold that to prove criminal negligence in a manslaughter case, the State must prove that a defendant failed to be aware of a substantial risk that a *homicide*, rather than a wrongful act, may occur.

Consequently, a defendant who assaulted a victim without creating a *substantial risk* that a homicide may occur, but who caused a homicide nonetheless, could have been convicted of Nevada's voluntary manslaughter, but not Washington's second degree manslaughter. Thus, Nevada's voluntary manslaughter is broader than Washington's second degree manslaughter, precluding the offenses' legal comparability.

2. *Factual Comparability*

Because the offenses are not legally comparable, we next analyze factual comparability. As discussed above, Latham stipulated to a mens rea as to only the act causing the homicide, not the consequence of homicide itself. Thus, Latham did not stipulate to acting with a failure to be aware of a substantial risk that a homicide may occur. Because the undisputed facts in the foreign record do not evidence an element of Washington's second degree manslaughter, failure to be aware of a substantial risk that a homicide may occur, the State failed to provide sufficient evidence to prove with a preponderance of the evidence that Latham's *Alford* plea to Nevada's voluntary manslaughter is factually comparable to Washington's second degree manslaughter.

C.    *Second Degree Murder*

The trial court found that Nevada's voluntary manslaughter is comparable to Washington's second degree murder. We disagree.

1. *Legal Comparability*

Washington defined second degree murder at RCW 9A.32.050:

(1) A person is guilty of murder in the second degree when:
     (a) With intent to cause the death of another person but without premeditation, he or she causes the death of such person or of a third person.

Washington's second degree murder required proving that the defendant acted with intent to cause a homicide. Consequently, a defendant who acted without intending to cause a homicide, but whose act caused a homicide nonetheless, could have been convicted of Nevada's voluntary manslaughter, but not Washington's second degree murder. Thus, Nevada's voluntary manslaughter is broader than Washington's second degree murder, precluding the offenses' legal comparability.

2. *Factual Comparability*

Because the offenses are not legally comparable, we next analyze factual comparability. As discussed above, Latham did not stipulate to acting with an intent to cause a homicide. Because the undisputed facts in the foreign record do not evidence an element of Washington's second degree murder, intent to cause a homicide, the State failed to provide sufficient evidence to prove with a preponderance of the evidence that Latham's *Alford* plea to Nevada's voluntary manslaughter is factually comparable to Washington's second degree murder.

D.    *Second Degree Felony Murder*

The State argues that Latham's *Alford* plea to Nevada's voluntary manslaughter is factually comparable to Washington's second degree felony murder because the undisputed facts in the record below evidence that Latham committed a felony assault which caused a homicide. We disagree, and hold that the offenses are not legally or factually comparable.

1. *Legal Comparability*

Washington defined second degree felony murder at RCW 9A.32.050:

(1) A person is guilty of murder in the second degree when:
     . . . ;
        (b)   He or she commits or attempts to commit any felony, including assault, . . . and, in the course of and in furtherance of such crime or in immediate

15

flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants.

Unlike Nevada's voluntary manslaughter, Washington's second degree felony murder required the defendant to commit a predicate felony. RCW 9A.32.050(1)(b). Thus, a defendant who committed a misdemeanor assault that caused a victim's homicide could have been convicted of Nevada's voluntary manslaughter, but not Washington's second degree felony murder. Thus, Nevada's voluntary manslaughter is broader than Washington's second degree felony murder, precluding the offenses' legal comparability.

2. *Factual Comparability*

Because the offenses are not legally comparable, we next analyze factual comparability, addressing each Washington felony assault statute in turn.

First degree assault required the defendant act with intent to inflict "great bodily harm." RCW 9A.36.011(1). As discussed above, the undisputed facts in the record do not evidence Latham's mental state as to the consequence of his acts, and thus, cannot evidence whether Latham acted with intent to inflict great bodily harm. Thus, the State failed to provide sufficient evidence to prove with a preponderance of the evidence that Latham's *Alford* plea to Nevada's voluntary manslaughter is factually comparable to Washington's first degree assault.

Washington defined second degree assault at former RCW 9A.36.021(1) (2007):

A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
    (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm;
    . . . ; or
    (c) Assaults another with a deadly weapon;
    . . . ; or
    (e) With intent to commit a felony, assaults another.

16

No. 43785-6-II

Former RCW 9A.36.021(1)(a), (c), and (e) are the only second degree assault subsections that could have potentially applied to Latham's voluntary manslaughter conviction.[10] *See* former RCW 9A.36.021(1).

Here, the State failed to provide any evidence as to whether Latham's assault *recklessly* inflicted substantial bodily harm, was committed with a deadly weapon, or was committed with intent to commit a felony. Thus, the State failed to provide sufficient evidence to prove with a preponderance of the evidence that Latham's *Alford* plea to Nevada's voluntary manslaughter is factually comparable to Washington's second degree assault.

Washington defined third degree assault at former RCW 9A.36.031(1) (2005):

> A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
> . . . ; or
> (d)  With criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm;
> . . . ; or
> (f)  With criminal negligence, causes bodily harm accompanied by substantial pain that extends for a period sufficient to cause considerable suffering.

Former RCW 9A.36.031(1)(d) and (f) are the only third degree assault subsections that could have potentially applied to Latham's voluntary manslaughter conviction.[11] *See* former RCW 9A.36.031(1).

---

[10] The remaining subsections involve harm to an unborn quick child or assaulting another by means of poison, torture, or strangulation. Former RCW 9A.36.021(1)(b), (d), (f), (g).

[11] The remaining subsections involve resisting arrest or assaulting transit operators, school bus drivers, fire department employees, law enforcement agency employees, peace officers, or health care providers. Former RCW 9A.36.031(1)(a)-(c), (e), (g)-(i).

Here, the State failed to provide any evidence as to whether Latham used any type of weapon or other instrument or thing likely to produce bodily harm. Nor did the State provide evidence as to whether Latham's voluntary manslaughter victim suffered substantial pain. Thus, the State failed to provide sufficient evidence to prove with a preponderance of the evidence that Latham's *Alford* plea to Nevada's voluntary manslaughter is factually comparable to Washington's second degree assault.

The State failed to provide sufficient evidence to prove with a preponderance of the evidence that Latham's *Alford* plea to Nevada's voluntary manslaughter is factually comparable to Washington's felony assault statutes. Thus, the State failed to provide sufficient evidence to prove with a preponderance of the evidence that Latham's *Alford* plea to Nevada's voluntary manslaughter is factually comparable to Washington's second degree felony murder with assault as the predicate felony.

Because neither of the two Nevada offenses is legally or factually comparable to any of Washington's most serious offenses put forward by the State or relied on by the trial court, we reverse Latham's sentence and remand for resentencing.

Worswick, J.

We concur:

Johanson, C.J.

Melnick, J.

18