IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33183-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J D MILLER, | ) | OPINION PUBLISHED IN PART |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — JD Miller challenges his conviction for first degree assault and

ensuing persistent offender sentence. We affirm the conviction and sentence, but remand

for reconsideration of the legal financial obligations (LFOs).

## FACTS

The charge arose from a confrontation outside the home of Markham Welch in

Clarkston. Christopher Bennett and his ex-wife, Stacy Bennett, drove to her home on the

evening of May 20, 2014, and noticed a white BMW idling in her neighbor Welch's

driveway. The Bennetts suspected Welch of drug dealing and had seen the BMW at the

location before. Welch was not home at the time; the building was dark.[1] Christopher

Bennett went over to the BMW to confront the driver.

---

[1] Power to the building had been shut off earlier that day.

Demanding to know what the driver, Dustin Pearson, was doing there, Christopher Bennett threatened to call the police. While Bennett went to retrieve his cell phone, Pearson drove away. Mr. Miller then emerged from Welch's house. He and Bennett exchanged words. Miller then struck Bennett once in the abdomen, stabbing him with a utility knife. Stacy Bennett drove Christopher to the hospital where he underwent emergency surgery.

Miller was arrested at a residence in Lewiston, Idaho, two days later. Pearson was arrested on May 20 at his girlfriend's house where he had been hiding in the basement crawlspace. Pearson eventually testified as a witness for the prosecution. When he testified that he fled the Welch property because he feared that Bennett was returning with a weapon, the prosecutor entered into evidence several items found in the back seat of Pearson's vehicle that he admitted keeping for protection—a tire iron with a taped handle, two knives, brass knuckles, and a starter pistol. The items were admitted over defense relevance and undue prejudice objections.

Welch testified for the prosecution that JD Miller's cousin lived in the house with him. A television from his house was discovered outside the home after the incident. When Welch testified that Mr. Miller had not taken the television, he was impeached with a note he had written to Stacy Bennett indicating that he believed the Bennetts had interrupted a burglary of his house. He testified to the jury that while he initially believed that Miller had burglarized the house, he later learned someone else had done so.

Mr. Miller testified on his own behalf that he had gone to Welch's house to see his cousin on her birthday. He walked into the house and discovered that no one was home. He did not remove the television or anything else. After the brief visit, he walked out and saw Pearson drive away from Christopher Bennett. Bennett came at him and Miller pulled his knife and stabbed Bennett once. The injured man backed off and the fight was over.

The prosecutor argued that Mr. Bennett's version of the events was more credible and that Mr. Miller should be found guilty of first or second degree assault. The defense argued that Mr. Miller had permission to be on the property and was merely defending himself. The jury subsequently returned a guilty verdict on the charge of first degree assault.

The only contested issue at sentencing was whether a prior Idaho conviction for aggravated assault was the equivalent of Washington's second degree assault. The trial court concluded that the two offenses were legally equivalent. The court then sentenced Mr. Miller to life in prison as a persistent offender. The court also imposed total legal financial obligations of $2,150; mandatory assessments constituted $800 of that figure.

Mr. Miller timely appealed to this court. A panel considered the case without argument.

No. 33183-1-III
*State v. Miller*


ANALYSIS

This appeal presents two primary issues.[2] In the published portion we consider

Mr. Miller's contention that the court erred in determining that the Idaho aggravated

assault conviction was the equivalent of a Washington second degree assault. He also

contends that the trial court erred in admitting irrelevant and prejudicial testimony.

Finally, he argues that the court erred in imposing LFOs without making a sufficient

inquiry into his ability to pay. We address first the equivalency argument before

addressing his other claims.

*Equivalency*

The sole issue argued at sentencing concerned the legal equivalency of the prior

Idaho conviction for aggravated assault. We agree with the trial court that the Idaho

offense was legally comparable to Washington's second degree assault.

Washington law requires that a persistent offender be sentenced to a term of life

imprisonment without the possibility of release. RCW 9.94A.570. A persistent offender

is one who has been convicted on at least three separate occasions, whether in

---

[2] Mr. Miller filed a pro se statement of additional grounds that does not present any meritorious issues. He contends first that the attorneys and judge conducted a chambers hearing that was not recorded, but can point to nothing in the record supporting the claim, nor can he show that any error occurred. He also argues that his CrR 3.3 timely trial right was violated, but presents no argument establishing why the trial court erred in granting the two continuances (one to each side) reflected in the record. Accordingly, we do not further consider the issues. RAP 10.10(c).

4

Washington or elsewhere, of felonies that under the laws of Washington would be considered most serious offenses. RCW 9.94A.030(38)(a). A "most serious offense" includes class A felonies, assault in the second degree, robbery in the second degree, and other assorted violent crimes. RCW 9.94A.030(33).

Foreign convictions from another state or federal court may only count as a most serious offense if the sentencing court is able to find the offense is legally or factually comparable to a Washington most serious offense. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 254, 111 P.3d 837 (2005). An appellate court reviews de novo whether an out-of-state conviction is comparable to a Washington crime. *State v. Sublett*, 176 Wn.2d 58, 87, 292 P.3d 715 (2012).

To determine comparability, we "first consider if the elements of the foreign offense are substantially similar to the Washington counterpart. If so, the inquiry ends." *Id.* If, however, the elements of the foreign conviction are not substantially similar, or if Washington defines the offense more narrowly than the foreign jurisdiction, it is necessary to look to the factual record of the foreign conviction to establish factual comparability. *State v. Latham*, 183 Wn. App. 390, 397, 335 P.3d 960 (2014). Offenses are factually comparable "if the defendant's conduct constituting the foreign offense, as evidenced by the undisputed facts in the foreign record, would constitute the Washington offense." *Latham*, 183 Wn. App. at 397-98. The State must prove factual comparability by a preponderance of the evidence. *Id.* at 398.

5

Idaho defines assault as "[a]n intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." IDAHO CODE §18-901(b). An aggravated assault is an assault with "a deadly weapon or instrument without intent to kill." IDAHO CODE §18-905(a). In Idaho, a knife is a deadly weapon. *State v. Cudd*, 137 Idaho 625, 627-28, 51 P.3d 439 (Ct. App. 2002); *State v. Hernandez*, 120 Idaho 653, 659, 818 P.2d 768 (Ct. App. 1991).

Washington defines assault according to the common law and recognizes three alternative means for committing assault: battery, attempted battery, and creating an apprehension of bodily harm. 13A SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 305, at 41 (1998). The third definition is at issue here. Under that definition, an actor commits assault by "'putting another in apprehension of harm, whether or not the actor actually intends to inflict'" the harm. *State v. Frazier*, 81 Wn.2d 628, 631, 503 P.2d 1073 (1972) (quoting *United States v. Rizzo*, 409 F.2d 400, 403 (7th Cir. 1969). The actor, however, must act with the intent to create that apprehension. *State v. Krup*, 36 Wn. App. 454, 458-59, 676 P.2d 507 (1984). The conduct must go beyond mere threats; there must be some physical action that, under all the "circumstances of the incident, are sufficient to induce a reasonable apprehension by the victim that physical injury is imminent." *State v. Maurer*, 34 Wn. App. 573, 580, 663 P.2d 152 (1983).

In Washington, assault in the second degree occurs when a person (among other things) "[a]ssaults another with a deadly weapon." RCW 9A.36.021(c). "Deadly weapon" means "any . . . weapon, device, instrument, [or] article . . . which, under the circumstances in which it is used, attempted to be used, or threatened to be used, is readily capable of causing death or substantial bodily harm." RCW 9A.04.110(6).

A comparison of the major elements of the two statutes:

| | Idaho:<br>Aggravated Assault<br>Idaho Code 18-905(a) | Washington:<br>Assault in the second degree<br>RCW 9A.36.021(c) |
|---|---|---|
| Intent of actor | Intend to threaten violence but do not intend to kill | Intend to create apprehension of harm |
| Result in victim | Create a well-founded fear that violence is imminent | Induce a reasonable apprehension that violence is imminent |
| Additionally... | With a deadly weapon or instrument | With a deadly weapon |

The trial court concluded that the two crimes were equivalent and, therefore, did not address the question of whether Mr. Miller's conduct would factually have constituted second degree assault in Washington.[3] As the above chart suggests, we agree that the offenses are equivalent.

Both crimes share the same intent. Idaho's "threaten violence" standard is equivalent to Washington's "create apprehension of harm." Both states use the common law definitions of assault that include both assault and battery. As critical here, both

---

[3] The Idaho charging document alleged that Mr. Miller threatened a woman with a large butcher knife. Clerk's Papers at 77.

states recognized that threatened use of force constitutes an assault. The Idaho statute is somewhat narrower in that the threat need not rise to the level of a threat to kill, while Washington's includes no limitation. The level of threatened harm in the two states is equivalent.

Similarly, both definitions require that the victim apprehend the threat and be affected by it. In Idaho, the victim needs to have a well-founded fear that violence is imminent. In Washington, the threat needs to induce a reasonable apprehension of imminent violence. We believe a well-founded fear of imminent violence is the equivalent of a reasonable apprehension of imminent violence.

Finally, both offenses must be committed with a "deadly weapon." While Idaho's assault statute encompasses "instruments" along with a deadly weapon, Washington's definition of deadly weapon also includes an "instrument." RCW 9A.04.110(6). A knife, Mr. Miller's weapon of choice in both cases, constitutes a deadly weapon in both states. Again, this element is shared by the two statutes.

The two statutes are virtually identical. An aggravated assault in Idaho, which constitutes an assault with a deadly weapon, is the equivalent of Washington's second degree assault by means of an assault with a deadly weapon. Both statutes use the same definition of assault and the same definition of deadly weapon. In each instance, the statutes require that the victim have either a "well-founded fear" or "reasonable apprehension" of imminent violence.

8

Agreeing with the trial court, we hold that an Idaho aggravated assault is the legal equivalent of Washington's second degree assault. The trial court properly characterized the prior Idaho conviction as a "strike" when it sentenced Mr. Miller as a persistent offender.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

*Evidentiary Arguments*

Mr. Miller contends that the trial court erred in admitting into evidence information about Pearson's flight from the police and the weapons found in his car, as well as erred in admitting evidence that the television was found in the bushes outside Welch's house and that Welch initially suspected Miller of burglary. The defense challenged this evidence at trial on the basis of ER 401 and ER 403.

Properly preserved evidentiary objections are largely governed by the Rules of Evidence and are subject to well understood standards of review. Evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable." ER 401. Relevant evidence is generally admissible at trial, but can be excluded where its value is outweighed by other considerations such as misleading the jury or wasting time. ER 402; ER 403. Trial court decisions to admit or

exclude evidence are entitled to great deference and will be overturned only for manifest

abuse of discretion. *State v. Luvene*, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995).

Discretion is abused where it is exercised on untenable grounds or for untenable reasons.

*State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). A court also

abuses its discretion when it applies the wrong legal standard. *State v. Rafay*, 167 Wn.2d

644, 655, 222 P.3d 86 (2009).

The failure to raise an evidentiary objection to the trial court waives the objection.

*State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985); *State v. Boast*, 87 Wn.2d 447,

451-52, 553 P.2d 1322 (1976). As explained in *Guloy*:

> A party may only assign error in the appellate court on the specific ground
> of the evidentiary objection made at trial. Since the specific objection
> made at trial is not the basis the defendants are arguing before this court,
> they have lost their opportunity for review.

*Guloy*, 104 Wn.2d at 422 (citation omitted).

With that background, it is time to turn to Mr. Miller's arguments. Pearson

testified at trial without objection that he had seen police cars with flashing lights and had

pulled over to hide from one of them. Officers then testified, without objection, that they

had knocked at the house where he was hiding and been told that he was not there.

Counsel objected on ER 401 and ER 403 grounds when the prosecutor asked what

happened next. The court permitted the testimony to complete the story and for

10

impeachment purposes. When officers started to impound his car, Pearson's girlfriend had admitted that he was present and he came out of the house.

On appeal, Mr. Miller now argues that this testimony violated ER 404(b). Since he did not raise that argument at trial, he cannot do so now. *Guloy*, 104 Wn.2d at 422. The initial testimony about the "flight" and concealment at the house went unchallenged, so any claim is now waived. *Id.* The "what happened next" testimony completed the story; the trial court also admitted it as impeachment evidence that conflicted somewhat with how the officers described the encounter. This was a tenable basis to admit the evidence. While it was of minor relevance, it also was not prejudicial to Miller.

Of more significant concern was the discussion of the various weapons found in Pearson's car. The defense challenged this evidence on the basis of ER 401 and ER 403 and received a standing objection on those grounds to each of the items introduced. Pearson had described his encounter with Bennett to the jury. Pearson denied that Bennett had said anything about calling the police and was "concerned" about whatever Bennett had in his hand as he returned to the car. While Pearson admitted he would have defended himself if on foot, he further testified that he fled solely because his car gave him the ability to escape safely. The trial court admitted the various items found in the car to impeach Pearson's claim that he fled due to concerns for his safety rather than because of fear of arrest. This was a tenable basis for admitting the evidence. Bennett's and Pearson's versions of their encounter conflicted; the fact that Pearson was well-

11

armed contradicted his claim that he needed to flee for personal safety purposes. It presented the jury with opposing explanations for Pearson disappearing and leaving his friend Miller to face Bennett alone. To the extent it reflected whose version should be believed, the evidence was relevant to the respective credibility of Pearson and Bennett.

Mr. Miller also argues on appeal that evidence of the television found in the bushes and Mr. Welch's note to Stacy Bennett should not have been admitted. At trial, he again challenged both pieces of evidence on the basis of relevance and undue prejudice, citing to ER 401 and 403. The trial court found the evidence relevant. The relevancy was particularly obvious in light of Welch's apparent backtracking on the witness stand. While he initially had told Ms. Bennett that he had been the victim of a burglary, he claimed that he later learned from his cousin[4] that she had given permission for JD Miller to be there and that someone other than Miller or Pearson had put his television outside the house. Mr. Miller was there helping remodel the building.

The relevancy of the note was obvious. It conflicted with Mr. Welch's testimony that Mr. Miller had permission to be at the house and was authorized to remodel the building. The presence of the television in the backyard was consistent with the State's theory that Miller was present to burglarize the deserted house. The challenged evidence was relevant. Use of the note to impeach Welch was somewhat prejudicial to Mr. Miller

---

[4] Welch testified that through marriage his roommate was both his cousin and Mr. Miller's cousin, but the two men were not themselves related.

12

in that it alleged burglary, but the note only became admissible once Welch told a different story that supported Miller. The presence of television in the backyard was not unfairly prejudicial to Mr. Miller merely because it supported the State's case.

The trial court had tenable grounds for admitting the evidence and did not err in its determination that the evidence was not unfairly prejudicial. Mr. Miller did not raise ER 404(b) at trial as a basis for excluding the evidence. He cannot do so now.

There was no evidentiary error.

*Legal Financial Obligations*

Mr. Miller also requests that we remand for consideration of his LFOs due to the failure of the trial court to conduct the inquiry dictated by *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). In light of our decision upholding Mr. Miller's persistent offender status, we exercise the discretion accorded us in *Blazina* to remand for consideration of the discretionary LFOs. The court may either strike them or conduct a sentencing hearing on that issue.

Affirmed and remanded.

_____
Korsmo, J.

WE CONCUR:

_____          _____
Fearing, C.J.                                            Pennell, J.

13