# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54204-8-II |
| Respondent, | |
| v. | |
| EDWARD LEONARD STOGDILL, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Edward L. Stogdill appeals his conviction for two counts of second degree assault with a deadly weapon. Stogdill argues that he received ineffective assistance of counsel when his defense counsel failed to request a fourth degree assault instruction. In his statement of additional grounds (SAG), Stogdill argues that insufficient evidence supports his conviction for second degree assault. Stogdill also argues that he is entitled to resentencing because his offender score is incorrect. We hold that Stogdill was not entitled to a fourth degree assault instruction, and thus, his claim of ineffective assistance of counsel fails, and sufficient evidence supports his conviction. We also hold that resentencing is not required. Accordingly, we affirm Stogdill's conviction and sentence.

FACTS

Lakisha Stogdill[1] is Edward Stogdill's wife.   In February 2019, Lakisha sought and obtained a protection order against Stogdill.

Pedro Hernandez was Lakisha's boyfriend in March 2019.  He testified at trial as follows. Lakisha had bought a new vehicle and had Hernandez help her pick the new vehicle up.  Once at Hernandez's house, they were sitting in Lakisha's vehicle talking for about 20 minutes when Stogdill drove by fast a couple of times yelling and screaming.  Hernandez's car was also parked near his house.  When Hernandez first saw Stogdill's vehicle, he and Lakisha were inside Lakisha's vehicle.  Hernandez exited Lakisha's vehicle and went to open Lakisha's door because she did not want to leave the vehicle.  Hernandez testified that Stogdill began yelling and cursing at him, as well as saying that he was going to "kill him" and "shoot up the house."  Verbatim Report of Proceedings (VRP) (Oct. 2, 2019) at 247-48.

Hernandez was standing in the street when Stogdill swerved his car towards him, causing him to jump between vehicles in order to avoid being hit.  Once Stogdill drove to the end of the street, he turned around and drove back and continued yelling at both Lakisha and Hernandez. Stogdill's car was wandering all over the road and doing burnouts in the street.  Every time Hernandez saw Stogdill drive up the street, Hernandez had to keep moving back and forth between the vehicles.  Stogdill continued this for about 20 minutes.  After Stogdill left, Hernandez called the police.  While waiting for the police to show up, Stogdill called Lakisha's phone numerous

---

[1] Because Lakisha and Edward Stogdill share the same last name, we refer to Lakisha by her first name.

times screaming: things like "I'm going to kill you, I'm going to beat you up." VRP (Oct. 2, 2019) at 242. When the police officers arrived at the scene, Lakisha was upset and shaking.

Lakisha recalled a different version of events than did Hernandez. Lakisha testified that she was still married to Stogdill but had obtained a domestic violence protection order against him in February 2019. On March 18, 2019, Lakisha had bought a new vehicle and went to Hernandez's house. As she and Hernandez were sitting in her truck in his driveway, Stogdill drove by fast a couple of times yelling and screaming from his vehicle. She denied that Stogdill tried to drive his vehicle at Lakisha's or Hernandez's vehicle, or at Hernandez. She did not recall Stogdill ever attempting to swerve to hit anything. Lakisha recalled that Stogdill did not have any weapons on him. After Stogdill left, Lakisha testified that she got out of her vehicle and called the police because Hernandez forced her to.

Once the police arrived, Stogdill called Lakisha, and Officer Matthew Collins answered the call and talked to Stogdill. While on the phone with Officer Collins, Stogdill became "defiant" and said, "Prove it, bitch; he said/she said; you got nothing on me. Prove it." VRP (Oct. 2, 2019) at 264. Stogdill then hung up the phone. Lakisha told Officer Collins that this sort of behavior by Stogdill happened frequently.

The State charged Stogdill with amended charges to include two counts of assault in the second degree with a deadly weapon, two counts of felony harassment, two counts of violation of a protection order, one count of obstructing a law enforcement officer, and one count of tampering with a witness.

Defense counsel argued that Lakisha's testimony, that Stogdill did not swerve his vehicle at her or Hernandez, proved that Stogdill did not commit second degree assault as charged. Defense counsel also argued that Hernandez was motivated to lie about the assault to "get rid of the competition." VRP (Oct. 7, 2019) at 458-59. Once the State rested its case, defense counsel moved to dismiss all the charges. The court granted defense counsel's motion as to count 4, the felony harassment charge in regard to Lakisha, and to count 8, tampering with a witness.

The court instructed the jury on assault in the second degree with a deadly weapon, the definition of a deadly weapon, and the definition of assault. Stogdill's defense counsel did not request a fourth degree assault instruction. The jury found Stogdill guilty of all charges. The jury returned special verdicts that Stogdill was armed with a deadly weapon—his vehicle—and that Stogdill and Lakisha were members of the same family.

Stogdill filed a motion for a new trial based on a juror's unsworn discussion with the defense investigator post-verdict. The defense investigator stated that the juror told him that there was not enough evidence to prove that Stogdill drove his vehicle toward Lakisha and Hernandez, but that the other jurors convinced him there was. The same juror refused to sign a declaration confirming his statement. The court denied this motion and ultimately sentenced Stogdill to 72 months confinement.

Stogdill appeals his conviction for second degree assault with a deadly weapon.

ANALYSIS

I. INEFFECTIVE ASSISTANCE OF COUNSEL—FOURTH DEGREE ASSAULT INSTRUCTION

Stogdill argues that his defense counsel was ineffective for failing to request a fourth degree assault instruction because the evidence supported it, there was no legitimate tactical reason not to request the instruction, and a juror's unsworn statement to the defense investigator's post-verdict proved that the jury did not unanimously agree that the victims were assaulted with a deadly weapon. We hold that Stogdill was not entitled to a fourth degree assault instruction, and thus, his claim of ineffective assistance of counsel fails.

A. INEFFECTIVE ASSISTANCE OF COUNSEL

Ineffective assistance of counsel is a constitutional error arising from the Sixth Amendment to the United States Constitution and article 1, section 22 of the Washington Constitution. *See State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). To prevail on an ineffective assistance claim, the defendant must show that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Estes*, 188 Wn.2d at 457-58. Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Estes*, 188 Wn.2d at 458. Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have been different. *Estes*, 188 Wn.2d at 467.

Failure to request an inferior degree instruction is only deficient performance if the defendant was entitled to such an instruction. *In re the Pers. Restraint of Cross*, 180 Wn.2d 664,

718, 327 P.3d 660 (2014), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018).

B. LESSER INCLUDED INSTRUCTION

A party requesting a lesser included offense instruction must satisfy a two-pronged test, also known as the *Workman*[2] test: (1) a legal prong that requires a showing that all elements of the lesser offense are necessary elements of the charged offense; and (2) a factual prong that requires production of evidence that supports an inference that *only* the lesser crime was committed to the exclusion of the greater crime charged. *State v. Condon*, 182 Wn.2d 307, 316, 343 P.3d 357 (2015). If both prongs are satisfied, the requesting party is entitled to the lesser included offense instruction. *Condon*, 182 Wn.2d at 316.

A person commits assault in the second degree under one statutory meaning if he or she "[a]ssaults another with a deadly weapon." RCW 9A.36.021(1)(c). A person commits assault in the fourth degree if "under circumstances not amounting to assault in the first, second, or third degree . . . he or she assaults another." RCW 9A.36.041(1). The only difference between these means of committing second degree and fourth degree assault is whether the person used a deadly weapon to commit the assault.

Here, the legal prong of the *Workman* rule is met. The jury convicted Stogdill of two counts of assault in the second degree with a deadly weapon. The jury specifically found that the vehicle Stogdill was driving when he swerved at Hernandez and Lakisha was a deadly weapon under RCW 9A.36.021(1)(c). Each of the elements of assault in the fourth degree are a necessary

---

[2] *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978).

6

element of assault in the second degree. *See* RCW 9A.36.021(1)(c); *see also* RCW 9A.36.041(1). Accordingly, we focus our analysis on whether the factual prong of the *Workman* rule is met.

C. ANALYSIS

The factual prong of the *Workman* test is met when, viewing the evidence in the light most favorable to the party requesting the instruction, substantial evidence in the record supports a rational inference that the defendant committed *only* the lesser included or inferior degree offense to the exclusion of the greater offense. *State v. Henderson*, 180 Wn. App. 138, 144, 321 P.3d 298 (2014).

Here, if the jury believed Hernandez's testimony that Stogdill did swerve or drive the vehicle at Hernandez or Lakisha, they could only find second degree assault and not fourth degree assault because a vehicle is a deadly weapon. RCW 9A.36.021(1)(c), RCW 9A.36.041(1). However, if the jury believed Lakisha, then there was no assault at all, and thus, the evidence could not support a fourth degree assault conviction. Accordingly, Stogdill was not entitled to a fourth degree assault instruction and his counsel was not deficient by failing to propose one.

II. STATEMENT OF ADDITIONAL GROUNDS (SAG)

In his SAG, Stogdill argues that insufficient evidence supports his conviction for second degree assault. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence, and we view the

evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Cardenas-Flores*, 189 Wn.2d at 265-66. Credibility determinations are made by the trier of fact and are not subject to review. *Cardenas-Flores*, 189 Wn.2d at 266. Circumstantial and direct evidence are equally reliable. *Cardenas-Flores*, 189 Wn.2d at 266.

Here, the jury essentially had to make its determination based on whether it believed Lakisha's or Hernandez's version of the events. This goes to credibility determinations, which are not subject to review. *Cardenas-Flores*, 189 Wn.2d at 266. Viewing the evidence in the light most favorable to the State, including Hernandez's testimony, a rational trier of fact could find beyond a reasonable doubt that Stogdill was guilty of second degree assault, and thus, we hold that there was sufficient evidence to support the conviction.

III. REQUEST FOR RESENTENCING

Our Supreme Court recently held that Washington's simple drug possession statute, RCW 69.50.4013(1), violates state and federal due process and it is unconstitutional, and therefore the statute is void. *State v. Blake*, 197 Wn.2d 179, 195, 481 P.2d 521 (Feb. 25, 2021). Stogdill argues that he is entitled to resentencing because his two convictions for unlawful possession of a controlled substance must be vacated, resulting in a lower offender score. The State responds that resentencing is unnecessary because even with the unlawful possession of controlled substances convictions being removed from Stogdill's offender score, his offender score will still be greater than nine on each offense, resulting in no change in his standard sentencing ranges. The court imposed a 72-month sentence on the assault charges and a 60-month sentence on the harassment charge, with all counts to run concurrently. CP at 107; VRP at 26.

Stogdill's offender score at sentencing was a 17.5 for count 1, a 12.5 for count 2, and an 11.5 for count 3. After *Blake*, these scores will be reduced to a 15.5, a 10.5, and a 9.5. Although a reduction in an offender score might require resentencing in other cases where the defendant was not originally sentenced at the bottom of the standard range, we conclude that the reduction in Stogdill's offender score would not make a difference here, so resentencing is not required.

CONCLUSION

We affirm Stogdill's conviction and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

GLASGOW, A.C.J.

MAXA, J.